This is an appeal from a partial summary judgment made final pursuant to Rule 54(b), A.R.Civ.P. We reverse and remand.
Detailed statements of both the case and the facts are necessary for an understanding of the dispositive issue here presented.
 STATEMENT OF THE CASE
On January 23, 1984, Kenai Oil and Gas, Inc. ("Kenai"), filed this civil action against Grace Petroleum Corporation ("Grace"). The complaint alleged 1) that Kenai and Grace entered into an "Operating Agreement and Authority for Expenditure Agreement" on or about July 22, 1981, which set out the terms under which exploration for oil and gas would be undertaken; 2) that the Operating Agreement provided that Kenai was to have a 9.375 per cent working interest in the exploration effort and that Grace, as operator, would be responsible for obtaining title opinions with respect to the lease interests of those who were parties to the Operating Agreement; 3) that at the time of the Operating Agreement's execution Grace knew or should have known that Kenai's title to mineral interests was apparently defective and that Grace had obtained competing mineral leases or the right to obtain such leases; 4) that Grace obtained a second title opinion by the end of 1981 which declared Kenai's interest void, and that the existence of this title opinion was not disclosed to Kenai until after Grace had disclosed that a third title opinion, prepared after the well had been successfully drilled and was producing, showed no interest belonging to Kenai; 5) that Grace charged and collected from Kenai a share of exploration expenses while concealing Grace's knowledge of the apparent title defect and the existence of the second title opinion; and 6) that Grace's early knowledge of the problem and the second title opinion continued to be concealed from Kenai bothafter Grace's disclosure of the opinion expressed in the third title opinion and during an effort to persuade Kenai to accept from Grace a refund of exploration and well costs.
Based on these factual allegations, Kenai charged Grace with eight counts of culpable conduct: 1) breach of contract; 2) breach of fiduciary duty; 3) gross negligence; 4) misrepresentation made willfully to deceive or recklessly without knowledge; 5) misrepresentation of material fact by mistake or innocently; 6) suppression of material facts which Grace was under obligation to communicate; 7) deceit; and 8) concealment and misrepresentation operating to estop Grace from denying Kenai certain gas well revenues. By amendment to that complaint, Kenai sought a declaration of its rights with respect to the mineral interests.
Grace's motion for partial summary judgment, claiming that counts two, four, five, six, and seven were barred by the one-year statute of limitations,[1] was granted and expressly made final. All of the statements of Kenai's claims sought damages for fraud and deceit. Kenai alleges error only with respect to its claims for fraud and deceit. *Page 1349 
 STATEMENT OF THE FACTS
On May 12, 1981, Kenai and Browning Welch, Inc., entered into a natural gas exploration and development contract. Pursuant to the terms of that agreement, Browning Welch agreed to purchase mineral interests in the Black Warrior Basin (to be paid for by Kenai) and to assign three-fourths of the acquired mineral interests to Kenai.
On June 19, 1981, Browning Welch leased from U.S. Pipe 
Foundry Company interests covering 12,066 acres of land, including a tract described as the north one-half of the south one-half of the southeast quarter of section two, township 14 south, range 12 west, in Fayette County, Alabama. This same property had previously been leased from U.S. Pipe by Grace or by its predecessor, Cleary Petroleum.
On July 10, 1981, George Cox, a landman employed by Grace, wrote a letter to Kenai soliciting Kenai's participation in a well-drilling project. Cox's letter stated that a preliminary check of working interests revealed that Kenai owned the mineral interests in 9.375 per cent of the spacing unit which was proposed by Grace. Cox, on behalf of Grace, requested that Kenai confirm its proposed working interest and enclosed with the letter a preliminary drilling opinion prepared by Jack Fine. This title opinion reflected that Kenai and Browning 
Welch had good and valid title to the mineral interests in the 40-acre tract leased by Browning Welch for itself and Kenai.
In response to the letter from Cox/Grace, Kenai executed an authorization for expenditure ("AFE") which indicated Kenai's willingness to pay for its proportionate share of the drilling and exploration costs of the proposed well. An operating agreement dated July 22, 1981, was also signed, setting out the working interest owned by Kenai at 9.375 per cent and listing the responsibilities of the operator, Grace, as well as the rights and obligations of the non-operating working interest owners.
Among the obligations of Grace, as operator, was the securing of title opinions. Pursuant to the operating agreement, Grace agreed:
 "Title examination shall be made on the drillsite of any proposed well prior to commencement of drilling operations or, if the Drilling Parties so request, title examination shall be made on the leases and/or oil and gas interests included or planned to be included, in the drilling unit around such well. The opinion will include the ownership of the working interest, minerals, royalty and production payments under the applicable leases. . . . Operator shall cause title to be examined by attorneys on its staff or outside attorneys. Copies of all title opinions shall be furnished to each party hereto.
". . . .
 "No well shall be drilled on the Contract Area until after (1) the title to the drillsite or drilling unit has been examined as above provided, and (2) the title has been approved by the examining attorney or title has been accepted by all of the parties who are to participate in the drilling of the well."
Drilling of the well, which became known as Laningham 2-15, began on November 5, 1981, and the well was completed on January 18, 1982. Kenai paid the 1982 and 1983 invoices for drilling expenses and operating expenses both by check and by Grace's offsetting income otherwise payable to Kenai from another well being operated by Grace.
On December 9, 1982, in response to a December 1 inquiry from Kenai, Grace wrote a letter to Kenai informing Kenai that the recent division order title opinion written by Grace's attorney did not disclose Kenai as having an interest in the Laningham 2-15 well. In response to the Grace letter concerning Kenai's mineral interests, Kenai employees attempted to determine the status of Kenai's title. According to a December 30, 1982, memorandum (prepared by Kenai employee Bill Long), Fleming Browning of Browning Welch was asked by telephone on December 29 if he knew the basis for Grace's assertion that it owned the mineral interests at issue. That memorandum reflected that either Mr. *Page 1350 
Long or Mr. Browning speculated that Grace had purchased the mineral interests after a division order title opinion had been issued which might have shown the mineral interests as being leased.
Kenai personnel made an effort to obtain title opinions from Grace in the latter part of 1982. Correspondence reveals that title opinions were apparently forwarded to Kenai by Grace in March of 1983. Other documents earlier prepared by or received by Browning Welch were also forwarded to Kenai on March 21, 1983. Some of these documents forwarded by Browning Welch bore a "received" stamp indicating the date on which they were received by Browning Welch. Although Browning Welch's receipt stamp indicates that Browning Welch received some of the documents in October and November of 1982, a March 21, 1983, cover letter reflects that they were not made available to Kenai until that later date.
Kenai allegedly became aware of the fact that three title opinions had been prepared for or received by Grace when the three title opinions were sent to Kenai by Grace in March of 1983. These three title opinions were prepared as follows: 1) a preliminary title opinion dated March 30, 1981, by Jack Fine; 2) a supplemental drilling opinion from the law firm of Patterson Patterson, dated December 18, 1981; and 3) a division order title opinion prepared by Jack Fine, dated September 7, 1982.
After March of 1983, Kenai discovered that a landman named Sam Martin had been obtaining mineral leases adverse to Kenai's lease interests as early as November of 1980 and through November of 1981. Adverse leases covering over 37 acres of the 40-acre tract leased by Kenai were owned by Grace before May of 1981. After discovery was underway in this action, Kenai learned that Sam Martin had informed Grace's landman George Cox that, in Martin's opinion, the U.S. Pipe lease title was defective before Grace submitted the first Fine title opinion to Kenai with the request that Kenai obligate itself to pay for 9.375 per cent of the expense of drilling the Laningham 2-15 well.
 SUMMARY OF THE ARGUMENTS
The issue presented on this appeal is whether, as a matter of law, Kenai must be deemed to have discovered the alleged fraud more than one year before filing its complaint. In other words, in reviewing the action of the lower court, this Court must determine whether the record, viewed in a light most favorable to Kenai, contains any evidence or an inference therefrom that Kenai first discovered the alleged fraud within the one-year period prior to filing suit (i.e., January 23, 1983, through January 23, 1984).
Kenai claims that the trial court had before it ample evidence from which a jury could infer that Kenai first became aware of facts that would put a prudent person on notice of fraud well within the one-year period prior to filing suit. The record, maintains Kenai, demonstrates that Grace continued to conceal Grace's fraud from Kenai beyond the date considered by the trial judge to be the latest date on which the statute of limitations could begin running (December 30, 1982 — the date of the Kenai internal memo). Kenai also argues that the trial court's granting of partial summary judgment to Grace on Kenai's claims of fraud and deceit "exhibits a lack of appreciation both for the nature of Kenai's fraud claim and for the nature of the inquiry which must be made to determine whether a jury issue exists as to the date on which fraud [was] discovered."
Grace summarizes its position by arguing that "the facts are uncontroverted that Kenai was aware of circumstances indicating the possibility of a fraud no later than December 30, 1982, and Kenai itself acknowledged on December 1, 1982, that Grace had allegedly failed to perform its duties under the operating agreement."
The trial court agreed with Grace and held, in part:
 "According to Defendant's Exhibit No. 9 to the deposition of Joe Mazzola, an internal memo dated December 30, 1982, and the attachments thereof, it is uncontroverted that as of said date, Kenai Oil and Gas, Inc., the Plaintiff in this cause, *Page 1351 
was aware that Grace Petroleum Corporation, the Defendant in this case and the operator of the Laningham 2-15 Well . . . had informed Kenai that their division order title opinion indicated that Kenai Oil and Gas had no interest in the well contrary to the records of Kenai giving Kenai a 75% interest in a 100% mineral interest lease covering 40 acres in the 320 spacing unit. Kenai was also aware that the original drilling title opinion covering the Laningham well showed that United States Pipe and Foundry Company had the mineral interest which had been leased by Kenai and was thought by Kenai to give them the interest in the well. The memo further shows that Kenai was aware that the division order title opinion stated that United States Pipe Foundry Company had no mineral interest in the 320 spacing unit, in flat contradiction of the previous opinion and further that Grace Petroleum Corporation, the operator of the well, apparently having had initial access to the division order opinion, leased the 40 acres in question from the mineral owner stated in the opinion.
 "The Court therefore finds that as of December 30, 1982, Kenai was on notice of facts which were either actually discovered as of such time or such facts were known to Kenai as of December 30, 1982, which would invoke inquiry by a person of ordinary prudence and by simple investigation of the known facts, the Plaintiff would have discovered the alleged fraud, misrepresentation, deceit, and breach of fiduciary duty claimed in the Complaint.
 "The Court further finds that the memorandum of December 30, 1982, constitutes conclusive evidence of the discovery of facts sufficient to commence the running of the time within which to file a civil action based on claims of fraud and breach of fiduciary duty. . . . .
". . . .
 "Therefore, the statute of limitations began to run no later than December 30, 1982; [and] suit not being filed within one year of said date, the Plaintiff's claims made in Counts 2, 4, 5, 6, and 7 are barred by the statute of limitations of one year."
Our analysis of the issue here presented must be guided by two well-established principles of law: 1) the standard of review for motions for summary judgment; and 2) the law with respect to the discovery of an alleged fraud and the applicable statute of limitations for filing a complaint based on that fraud.
On motion for summary judgment, the moving party, in demonstrating to the satisfaction of the trial court that there is an absence of a genuine issue of material fact, bears a heavy burden. The movant must negate the existence ofany issue of material fact by showing that there is no evidence tending to support the non-movant's position. His case must also withstand scrutiny of the record in a light most favorable to the non-moving party. Ryan v. Charles Townsend Ford, Inc.,409 So.2d 784 (Ala. 1981). The weight of this burden is increased by the requirement that "[a]ll reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party." Sadie v. Martin,468 So.2d 162, 165 (Ala. 1985).
In the context of the instant case, then, this Court must determine whether, on motion for summary judgment, Grace carried its burden and demonstrated a total absence of disputed material fact as to the time Kenai knew or should have known of the alleged fraud. This inquiry is controlled by the standard announced in Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389,281 So.2d 636 (1973):
 "Fraud is deemed to have been discovered when it ought to have been discovered. Facts which provoke inquiry in the mind of a man of reasonable prudence, and which, if followed up, would have led to a discovery of the fraud, constitute sufficient evidence of discovery." Johnson, 291 Ala. at 397, 281 So.2d at 643.
The principles in Johnson, however, were never meant to be interpreted so that the rule determining the time of discovery of an alleged fraud, for statute of limitations purposes, could be applied so as to defeat *Page 1352 
the ultimate purpose of the law with regard to fraud.
 "Fraud, in the nature of it, implies that the party has been misled and that, by the wrong of another, he is accepting and resting in a false sense of security. A party thus situated is not required to presume fraud or suspect it, until something comes to him leading a just person to suspect and make inquiry." Williams v. Bedenbaugh, 215 Ala. 200, 204, 110 So. 286, 289 (1926). See, also, Mann v. Adams Realty Co., 556 F.2d 288 (5th Cir. 1977).
This Court has also said:
 "In cases of this sort, where representations have induced action and a sense of security in so doing, there is no legal duty to assume an attitude of suspicion and lookout for fraud until some fact comes to plaintiff's knowledge indicating probable fraud." Cartwright v. Braly, 218 Ala. 49, 53, 117 So. 477, 478 (1928).
Viewing the instant record most favorably to Kenai, the non-moving party, and in the context of the relationship between Kenai and Grace, we find that the trial court erred in granting Grace's motion for summary judgment. The agreement between Kenai and Grace contractually obligated Grace to perform the day-to-day operations of the well and to keep Kenai informed of the financial matters involving the well. Kenai, therefore, had the right to reasonably rely on Grace to perform the contract and to keep Kenai informed, because Grace, in its capacity as "operator" of the well, was Kenai's source of accurate statistics concerning the well's operations.
Therefore, according to Williams v. Bedenbaugh, supra, andCartwright v. Braly, supra, the contractual relationship between Kenai and Grace does play a part in determining whether Grace's assertion that a title opinion did not show Kenai as a mineral interest owner was sufficient to put Kenai on notice of fraud. Similarly, there was sufficient evidence before the trial court to prevent its holding that, as a matter of law, the December 30, 1982, internal Kenai memo was conclusive evidence of Kenai's knowledge of facts sufficient to put Kenai on notice of a possible fraud. In other words, while the December 9, 1982, letter from Grace to Kenai may have indicated a problem, the letter did not, as a matter of law, give Kenai notice of a fraud. For cases where the first notice of aproblem was not held to commence the running of the one-year statute, see Marks Fitzgerald Furniture Co. v. Clarklift ofAlabama, Inc., 494 So.2d 614 (Ala. 1986); Elrod v. Ford,489 So.2d 534 (Ala. 1986).
In light of the relationship between the parties, the duties imposed on the parties by their contract, and the nature of the fraud itself, there was evidence from which the jury could have found that the facts available to Kenai did not rise to the level of "notice of a fraud." Therefore, we find that Kenai's claims against Grace were not barred by the applicable statute of limitations, and we reverse the judgment and remand the cause to the trial court for further proceedings.
REVERSED AND REMANDED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.
[1] We recognize that recent amendments to our statutes of limitations extended the statutory period to two years effective January 9, 1985. See Act 85-39, Second Spec. Session, 1984-85 Ala. Acts, repealing § 6-2-39, and amending § 6-2-38
and § 6-2-3. Those amendments have no effect in this case.