Russell Upton appeals from a summary judgment entered by the Walker County Circuit Court in favor of Drummond Company, Inc. ("Drummond") on Upton's fraud claims. We affirm.
Upton sued Drummond in May 1997, alleging that Drummond had "guaranteed" him 18 months of work transporting coal if he would upgrade his tri-axle truck to a tractor-trailer, but that Drummond had terminated his work 11 months after it had made that "guarantee." Drummond filed *Page 375 
a motion for a summary judgment, supported by a brief, by portions of the transcript of Upton's deposition and the exhibits thereto, and by an affidavit of Larry Kennedy, its "transportation field coordinator"; two days before that motion was heard, Drummond supplied two exhibits that had been omitted from Kennedy's affidavit. On the day of the motion hearing, Upton filed a response to the motion, supported by a brief, his affidavit, the and transcript of his deposition, and the affidavits of two other coal haulers and the transcripts of their deposition. The trial court entered a summary judgment in favor of Drummond, and it later denied Upton's postjudgment motion.
Upton appealed from the summary judgment to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Our standard of review of summary judgments is settled:
 "In reviewing a summary judgment, this Court applies the same standard as the trial court. DuPont v. Yellow Cab Co. of Birmingham, Inc., 565 So.2d 190 (Ala. 1990). The trial court, and this Court on appeal, must view all of the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. If a reasonable doubt exists, it is to be resolved in favor of the nonmoving party. Kenai Oil Gas, Inc. v. Grace Petroleum Corp., 512 So.2d 1347 (Ala. 1987)."
Hinkle v. Cargill, Inc., 613 So.2d 1216, 1217 (Ala. 1992).
Viewed in a light most favorable to Upton, the record reveals the following facts. Upton, an independent contractor doing business as "Upton Trucking Company," entered into a coal-hauling agreement with Drummond on March 21, 1994. At the time he signed the agreement, Upton was given an opportunity to read, review, and ask questions concerning the contract, and he was familiar with its terms, including a termination provision by which the contract could be canceled "at any time, with or without cause, by either party by giving the other party thirty (30) days written notice, cancellation to become effective at the expiration of such notice."
During the months following the signing of the parties' contract, Upton hauled coal from Drummond's Kellerman mine, using a 1989 Mack tri-axle tandem "dump" truck. However, during 1995, Drummond decreased the level of production at two of its facilities, including the Kellerman mine on at least one occasion. At that time, Drummond terminated several contracts with independent contractors on a "first hire" date system; however, Upton remained on contract with Drummond. During the fall of 1995, Drummond told Upton and its other independent coal haulers that its Kellerman facility would reduce production, indicating that closure of the Kellerman mine was imminent; it informed Upton and several of its other independent contractors that once production ceased at Kellerman, they could only haul coal for Drummond from the Segco facility, which was owned by Alabama Power Company. Because Alabama Power would not allow tandem trucks to haul coal from Segco, Drummond told Upton and the remaining independent contractors that had hauled coal from Kellerman that they would need to have tractor-trailers by the first of the year (i.e., January 1996) to continue hauling coal for Drummond.
There is a factual dispute concerning the subsequent events. Kennedy, Drummond's transportation field coordinator, stated in his affidavit that "[a]t no time were any independent contractors operating tractor trailers at the Segco facility promised or guaranteed that the hauling at the Segco facility would last for any definite time," and that "[t]he length of time that Drummond and its independent contractors hauled coal from the Segco facility was controlled by Alabama Power and not by Drummond." However, Upton testified *Page 376 
at his deposition and affirmed in his affidavit[1] that in December 1995, Kennedy had "guaranteed" him that he would have 18 months of hauling and "probably two to five years" of hauling, and that he had purchased a new Peterbilt tractor truck and a used trailer immediately thereafter for $94,000.
In April 1996, Upton's coal pickup point was changed from Kellerman to two other Drummond facilities, Cedrum and Shoal Creek. However, in November 1996, Alabama Power notified Drummond that it would terminate Drummond's services at its Segco and Gorgas mines within 60 days. Drummond, in turn, terminated several more of its contracts with independent contractors because their services would no longer be needed. Among the contracts terminated was Drummond's contract with Upton, who received a letter stating:
 "Due to recent changes in Drummond Coal's contracts with Alabama Power and mining operations being closed, Drummond must reduce the number of trucks contracted to haul coal in 1997. Because of these changes, the services of your company's truck or trucks will not be needed in the near future.
 "In accordance with paragraph 5(D) of the agreement between you and Drummond Company, Inc., Drummond hereby gives you written notice of its intent to cancel the contract between you as independent contractor and Drummond Company, Inc."
This termination occurred approximately 12 months after Kennedy had allegedly "guaranteed" Upton 18 months of continued coal hauling. Upton later sold his tractor-trailer for $65,000, or $29,000 less than he had paid for it; at that time, the tractor-trailer had an odometer reading of approximately 70,000 miles and had been involved in two accidents.
Upton contends that the trial court erred in entering the summary judgment because, he says, he adduced sufficient evidence to create a genuine issue of material fact as to each of his three fraud claims. We note from the complaint that Upton's claims actually fall into two categories: (1) fraudulent misrepresentation arising from Drummond's alleged "guarantee" of 18 further months of coal-hauling, and (2) fraudulent suppression arising from Drummond's alleged failure to disclose that it would close certain mining operations before the 18-month period had expired. We will address these categories separately.
The alleged misrepresentation made by Drummond, i.e., that Upton's coal hauling was "guaranteed" for the 18 months following December 1995, is a statement relating to a promise to act in a certain way in the future. Under Alabama law, such a claim is one of "promissory fraud," and a plaintiff stating such a claim must satisfy six elements in order to prevail:
 "The elements of fraud[ulent misrepresentation] are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant *Page 377 
had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive. Furthermore, the failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. If it were, the mere breach of a contract would be tantamount to fraud."
Padgett v. Hughes, 535 So.2d 140, 142 (Ala. 1988)[2] (citations and internal quotation marks omitted); see also Hinkle, 613 So.2d at 1220 (mentioning elements (5) and (6) without numbering them). In Drummond's brief to this court, Drummond contends, among other things, that Upton has not demonstrated that Drummond did not have the intent to perform the act promised at the time ofKennedy's alleged representation, which is the fifth element of a promissory-fraud claim under Alabama law.
Turning to Kennedy's affidavit, we discern that Drummond's policy was to insert a 30-day termination clause in its contracts with independent coal haulers, and to adhere to a "first-hired" system with respect to which of its independent contractors would be retained and which would be terminated in the event of a closure or a slowdown in coal production. Kennedy's affidavit refers to two instances of such "downsizing" on the part of Drummond in 1995, resulting in the termination of no fewer than 9 independent contractors during that year. Upton's contract survived this first round of contract terminations, but the Kellerman mine from which he was hauling coal had suffered a decrease in production, and he was informed that once production ceased at that mine, he would need to have a tractor-trailer if he were to haul coal from Segco, a Drummond facility that was actually owned by Alabama Power. However, while the length of time that Drummond and its independent contractors would haul coal from Segco was under the control of Alabama Power and not Drummond, Drummond had not in December 1995 received any notice that its contract with Alabama Power to haul coal from Segco would be terminated. Stated another way, Kennedy's affidavit demonstrates that Drummond had no knowledge that it would again be forced to terminate coal-hauling contracts because of a shutdown at Segco, and constitutes a prima facie showing of an intent to afford Upton an additional 18 months of hauling coal in December 1995. Upton's deposition testimony and affidavit, while rebutting Drummond's showing that no statement regarding a guarantee was made to him, did not rebut Drummond's showing that in December 1995 it had no intent not to afford Upton 18 months of hauling.
In Hinkle, supra, an agent of an egg-farming corporation allegedly promised two independent egg producers to supply them with chickens for their planned chicken house over the course of a period of 20 years, after which the egg producers' $240,000 construction loan with respect to that house would be fully repaid. Although the corporation did place chickens in the egg producers' chicken house after it was completed, and continued to place chickens in that chicken house for nine years thereafter, the corporation sold all of its chickens in the area to another company, and that successor company removed all of the remaining chickens from the egg producers' chicken house. In affirming a summary judgment in favor of the egg-farming corporation on the egg producers' promissory-fraud claim arising from the agent's "20-year" guarantee, the Alabama Supreme Court reasoned that the corporation's subsequent decision, in light of a decline in egg consumption, to discontinue operations did not constitute evidence that the corporation, when its agent allegedly made that representation nine years *Page 378 
beforehand, had not intended to supply the producers with chickens for 20 years. 613 So.2d at 1221-22.
In Hinkle, then, evidence of a breach of an oral "guarantee" just under halfway through the duration of that "guarantee" was not sufficient to demonstrate promissory fraud. Similarly, in this case, Drummond's termination of Upton's contract two-thirds of the way into a "guarantee" period after the termination by Alabama Power of one of Drummond's own coal-supply contracts does not amount to evidence that Drummond did not intend, in December 1995, to keep Upton's contract in effect for the following 18 months. Because Upton did not adduce substantial evidence that Drummond intended in December 1995 not to provide him with 18 months of further coal hauling, we conclude that the summary judgment was correct to the extent that Upton sought damages as a result of Kennedy's "guarantee."
With respect to Upton's claims based upon Drummond's alleged suppression of material facts, we note that Upton must show: (1) that Drummond had a duty to disclose the existing material fact; (2) that Drummond suppressed that material fact; (3) that that suppression induced Upton to act or to refrain from acting; and (4) that Upton suffered actual damage as a proximate result.State Farm Fire Cas. Co. v. Owen, 729 So.2d 834, 837
(Ala. 1998). In addition, it is well settled that a corporation can be liable for suppression "only if it had knowledge of the material fact it allegedly suppressed." 729 So.2d at 837.
Upton's complaint states that Drummond suppressed the "fact" that Drummond "would be closing certain mining operations prior to the guaranteed . . . (18) month period." However, Drummonddid inform Upton in fall 1995 that the Kellerman facility would cease production soon afterwards, and that he would need a tractor-trailer to haul coal from Segco, one of the remaining coal-loading sites — those facts were, therefore, not suppressed. Moreover, as we have noted, the right to end shipments from the Segco facility belonged not to Drummond, but to Alabama Power, and Kennedy's affidavit reveals that Drummond had no notice before November 1996 that Alabama Power would terminate its contract with Drummond as of January 1997. That Alabama Power would terminate Drummond's contract as to Segco was therefore not an existing fact at the time Upton purchased his tractor-trailer; furthermore, because it was not an existing fact at that time, Drummond could have had no knowledge of that contract's termination. Because Upton did not rebut these showings by substantial evidence, we conclude that the trial court correctly entered the summary judgment as to Upton's fraudulent-suppression claims as well.
Based upon the foregoing facts and authorities, the summary judgment in favor of Drummond is due to be affirmed.
AFFIRMED.
Yates, Monroe, Crawley, and Thompson, JJ., concur.
[1] While Drummond orally moved to strike Upton's affidavit as untimely under Rule 56(c)(2), Ala.R.Civ.P., the trial court did not expressly rule upon that motion; its summary judgment was entered "[a]fter reviewing all of the pertinent and relevant evidence." Because Rule 6(d), Ala.R.Civ.P., affords the trial court discretion to accept tardy affidavits in opposition to motions, and because the trial court entered the summary judgment without rejecting Upton's affidavit as untimely, we have considered the contents of that affidavit in determining whether Upton demonstrated the existence of a genuine issue of material fact. Accord, Duckett v. Wilson Hotel Management,Inc., 669 So.2d 977, 980 (Ala.Civ.App. 1995).
[2] We note that Padgett's "reasonable reliance" standard is the same as that readopted by the Alabama Supreme Court in Foremost Ins. Co. v. Parham, 693 So.2d 409
(Ala. 1997), for actions filed after March 14, 1997, such as Upton's.