281 So.2d 636

Walter E. JOHNSON et al.

v.

SHENANDOAH LIFE INSURANCE COMPANY, a corporation, et al.

INDUSTRIAL FINANCE AND THRIFT, INC., a corporation, et al.

v.

SHENANDOAH LIFE INSURANCE COMPANY, a corporation, et al.

SC 135, 138.

Supreme Court of Alabama.

July 19, 1973.

Rehearing Denied Aug. 30, 1973.

Louis E. Braswell, Mobile, for appellee Shenandoah Life Ins. Co.

McDermott & Slepian and Braxton L. Kittrell, Jr., Mobile, for appellants.

MERRILL, Justice.

This is an appeal from two judgments in cases tried together—one in which Walter E. Johnson and Glenn Merrill, individuals, were plaintiffs, and the other, Industrial Finance and Thrift, Inc. and Industrial Finance Co., Inc., corporations, were plaintiffs. The defendants in both suits were Shenandoah Life Insurance Co., a corporation, and Hightower and Thompson, individuals. The suits are for fraud (Counts One and Two), breach of contract (Counts Three and Seven) and the recovery of money paid (Counts Four, Five and Six).

The complaints were filed on August 3 and 4, 1970. In addition to the three defendants already listed, other defendants were Transtate Mortgage Service, Inc., Gulf National Mortgage Service Co., Inc., Sid C. Pruett and John Doe. These "other" defendants were stricken by plaintiffs on April 3, 1972, the first day of the trial, because they had never been served. Also,

plaintiffs added Count Seven for breach of contract. Defendants Hightower and Thompson had earlier filed appearances but did not appear at the trial. Shenandoah was the only contesting defendant.

Defendant Shenandoah entered a plea of the statute of limitations as to Counts One and Two of both suits. Plaintiff's replication to this plea attempted to invoke the saving provisions of Tit. 7, § 42, Code 1940. Defendant Shenandoah's demurrer to this replication was sustained. The affirmative charge was given in favor of defendant Shenandoah as to all counts of both suits. The jury returned a verdict against defendants Hightower and Thompson in favor of the plaintiff corporations for $34,913.20; the jury returned a verdict in favor of plaintiffs Johnson and Merrill for $24,000.00. This appeal was taken by the plaintiffs and the main argument is that the court erred in giving the affirmative charge in favor of Shenandoah.

In order to capitalize the two corporations, Industrial Finance and Thrift and Industrial Finance Co., that they had organized to carry on the business of consumer finance, the plaintiffs, Johnson and Merrill, contacted defendants, Hightower and Thompson, who were life insurance agents of Shenandoah Life Ins. Co. The four met in the office of Shenandoah, at Huntsville, which was identified by a large sign on top of the building. Johnson and Merrill brought with them a check for $3,000.00, which represented 2% of $150,000.00, the amount they originally intended to borrow. While at this meeting, Hightower introduced Johnson to Pruett, of Transtate Mortgage Service, by telephone and they discussed the loan. This check was made payable to Transtate. Johnson testified that he was told by Hightower that Transtate was a subsidiary of Shenandoah. In fact, Shenandoah had no such relationship with Transtate. Johnson and Merrill were persuaded to seek a loan of $400,000.00 instead of $150,000.00 at this meeting. An additional check for $5,000.00, which represented the balance of 2% of

$400,000.00, was mailed to Hightower and Thompson and was also made payable to Transtate.

Johnson testified that he was told that Shenandoah "was going to handle the funding of the money," but Hightower and Thompson did not recall any mention of Shenandoah as the lending agent. Neither Johnson nor Merrill inquired, or were told, whether Hightower and Thompson had the authority to make the loan. There was no authorization from Shenandoah for Hightower and Thompson to make loans. Only the Investment Committee of Shenandoah had the authority to make loans. Moreover, Shenandoah was forbidden by the law of the state of its incorporation (Virginia) to make a loan of the type sought by the plaintiffs.

Hightower and Thompson were interested in placing the loan so they could get the commission on the life insurance policies on the lives of Johnson and Merrill necessary to secure the loan. A check for $939.50 was paid to Shenandoah for such life insurance. This check was later refunded because Johnson and Merrill never accepted the policies.

Johnson and Merrill were required by Hightower and Pruett to put up an additional $20,000.00 as earnest money. Hightower and Thompson each wrote a letter to Johnson saying that upon payment of the additional money he would "personally guarantee a fundable commitment." The check for $20,000.00 was turned over to Pruett by Johnson and was likewise made payable to Transtate.

The mortgage commitment application was between Transtate Mortgage Service and Industrial Finance and Thrift; the name "Shenandoah" did not appear on the document, nor did it appear on the escrow agreement signed by Pruett and Johnson. The loan commitment delivered by Pruett in exchange for the additional money was made by Gulf National Mortgage Co. The standard contract bond, also delivered in exchange for the $20,000.00, was between Gulf National Mortgage and Industrial Finance and Thrift and Industrial Finance Co.

When it was discovered that the commitment was no good, Johnson and Merrill contacted Hightower and Pruett and were told there was some misunderstanding and that a fundable commitment would be issued in a few days. Johnson and Merrill later tried to get their money back after learning the commitment was not good. Johnson testified, "They kept reassuring us all was well." Near the end of June in 1969, Pruett gave Johnson and Merrill a $25,000.00 silver certificate which was found to be worthless. Pruett wrote two checks to the plaintiffs for $20,000.00 and $9,200.00 as a refund of money paid to him; these checks bounced on August 11, 1969.

■ Those assignments of error dealing with the affirmative charge in favor of Shenandoah as to Counts Four, Five and Six (recovery of money paid) are without merit. There was no proof of money paid to Shenandoah except for insurance premiums which Shenandoah refunded. All other money paid by the plaintiffs was paid to Transtate and there was no evidence to support those counts against the defendant, Shenandoah.

■ Another group of assignments charge error in the giving of the affirmative charges for Shenandoah as to Counts Three and Seven (the contract counts).

The correctness in giving these charges depends upon the authority of Hightower and Thompson to bind Shenandoah to make the type of loan sought by plaintiffs.

Appellants concede in brief that "there is no evidence in the record that the Defendants Hightower and Thompson had any express or implied authority to bind the Defendant Shenandoah to a contract to secure for the Plaintiffs a fundable loan commitment in the amount of $400,000.00. It is submitted, however, that there was ample evidence to submit to the jury that the Defendants Hightower and Thompson

were acting within the scope of their 'apparent' or 'ostensible' authority at the time they entered into the contract with the Plaintiffs."

■■ In Roberts & Sons v. Williams, 198 Ala. 290, 73 So. 502, this court said:

"Where the evidence shows that the actor has been held out by the alleged principal, as being his agent or as possessing the authority assumed by such agent within the scope of the principal's business, the doctrine of apparent authority can be invoked by one who has been misled to his detriment. * * * "

The following was written in Automotive Acceptance Corporation v. Powell, 45 Ala. App. 596, 234 So.2d 593:

"The doctrine of apparent authority does not rest upon what one thinks an agent's authority may be, or what the agent holds out his authority to be; rather, the doctrine of apparent authority is based on the principal's holding the agent out to a third person as having the authority under which he acts. The following statement on the doctrine of apparent authority is found in Am.Jur.2d, Agency, Sec. 74, p. 476:

" 'The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct and statements have created the apparent authority.'

"We would point out that Owens v. Wood, 43 Ala.App. 366, 190 So.2d 734, is to the same effect, and the Court of Appeals had this to say:

" 'In order to charge the principal because of apparent authority, a third party must prove that the principal manifested indicia of having cloaked the agent with the authority.' Restatement, 2d Agency, § 49."

"Apparent authority" is such as a principal knowingly permits an agent to assume or holds him out as possessing. First Trust Joint Stock Land Bank v. Diercks, 222 Iowa 534, 267 N.W. 708. It seems to be generally held that an agent's apparent authority must be based upon the conduct of the principal and not of the agent. 2A C. J.S. Agency § 161; 3 Am.Jur.2d, Agency, § 75.

■ A general agent has no implied authority to bind his principal by contracts unusual to agencies of like character, or beyond the usual scope of such agencies; and when he attempts to bind his principal by his extraordinary acts, the one dealing with him is put upon notice, and required to ascertain from some authoritative source whether such agent had the power to bind his principal thereby. Johnson v. Shook & Fletcher Supply Co., 245 Ala. 123, 16 So.2d 406.

■ A person dealing with a known agent is not authorized under any circumstances blindly to trust the agent's statements as to the extent of his powers. Johnson v. Shook & Fletcher Supply Co., supra.

■ The burden of proving an agency rests upon the party asserting its existance. City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45; Dixie Auto Ins. Co. v. Steele, 288 Ala. 459, 262 So.2d 283; Capital Security Co. v. Owen, 196 Ala. 385, 72 So. 8.

"The power (of an agent) to lend or borrow money is not to be inferred without clear evidence of such a grant, and must be either expressly conferred or necessarily implied from the authority granted, or be usually incident to the performance of acts which he is authorized to perform for the principal." 2A C.J.S. Agency § 192.

■ An agent has no implied or apparent authority to do that which the principal

himself would not be authorized to do. Gambill v. Fuqua, 148 Ala. 448, 42 So. 735.

It is undisputed that neither Hightower nor Thompson had any authority to make a loan of this type. It is also undisputed that Shenandoah was forbidden, by the law of the state of its incorporation, to make that type of loan.

The evidence relied on by appellants to establish an apparent agency of Hightower and Thompson is that they were insurance agents of Shenandoah; that Shenandoah furnished them stationery with "Shenandoah Life Insurance Company" printed thereon; that there was correspondence between them and appellants on that stationery; that Hightower and Thompson discussed a loan in Mobile which Shenandoah was allegedly going to make to Colonial Acres Nursing Home; and that appellants first met Hightower and Thompson in a one-story building in Huntsville with the name "Shenandoah Life Insurance Company" on a sign attached to the building.

The only evidence remotely connecting Shenandoah with loans was (1) Hightower's testimony that he once submitted an application to Shenandoah for a loan on a hospital, but that the loan did not go through; and (2) the testimony of witness Mills in reference to a loan to Colonial Nursing Home wherein he testified that Hightower said that "they had plenty of money for financing for nursing homes; they had financed apartment houses, shopping centers, etc."

It is undisputed that appellants made no inquiry into the authority of Hightower and Thompson to make the loan. When asked whether he had made any inquiries into the authority of the two insurance agents, Johnson replied, "Well, I didn't ask them did they. I just assumed that they, you know, were employed by them and accepted the money—that they had the authority." Likewise, Merrill made no inquiries into the authority to make such a loan and merely assumed that it existed.

Furthermore, the evidence showed that only the Investment Committee of Shenandoah could make loans. There was no authorization in the contracts of Hightower and Thompson with Shenandoah to make loans.

It is also undisputed that Shenandoah made only two types of loans, (1) policy loans against the cash surrender value of the policy; and (2) loans secured by a mortgage or deed of trust constituting a first lien on improved real estate.

Under the authorities cited, it is obvious that the trial court was correct in giving the affirmative charge as to Counts Three and Seven. There is no evidence in this record tending to show that Hightower or Thompson had any authority to lend or contract to lend Shenandoah's money (except on policy loans), nor is there any testimony showing that it was customary or usual in the insurance business for agents to lend money for their insurance companies. As already shown, representations of the agent cannot be the basis for a finding of apparent authority. Apparent authority must be traceable to the principal. We can find no evidence in the record of any acts on the part of Shenandoah that gave any appearance of authority to the agents to lend money or to promise funds to start a business. Appellants concede that they never inquired as to the authority of Hightower or Thompson even when they were paying their money to Transtate and not to Shenandoah. And finally, the agents could not do what the law forbade their principal to do.

Moreover, Shenandoah would not be liable under the dual agency theory. If Hightower and Thompson could obtain the loan for appellants, they would make good commissions on the life insurance policies required of the borrowers. We paraphrase what is written in Thigpen v. Arant, 213 Ala. 516, 105 So. 644[3], where the agent (Crumpton) of the principal (Thigpen) was seeking to get a loan for one Moye. In the matter of trying to get a loan for

appellants from Transtate, it would seem that Hightower's and Thompson's first duty was to appellants because appellants were seeking a loan from anyone and were looking to Hightower and Thompson to obtain it, and the failure of Hightower and Thompson to perform should not be visited upon Shenandoah, which knew nothing of the matter. See Florence v. Carr, 226 Ala. 654, 148 So. 148[4].

■ Finally, we consider the assignments charging error in giving the affirmative charge in favor of Shenandoah as to Counts One and Two (the fraud counts), and the sustaining of Shenandoah's demurrer to appellants' replication to Plea Two, which was that the fraud counts were barred by the statute of limitations of one year.

The suit was filed in Mobile County on August 3, 1970. Counts One and Two allege that the fraud occurred in January, 1969. The replication alleged that in March, 1969, plaintiffs "learned that the commitment submitted to them * * * was not a fundable commitment" and that plaintiffs "immediately took steps to inquire of the Defendants, jointly and severally, as to the reason or reasons why said commitment was not a fundable one. * * *"

The fraud alleged is that the commitment was not fundable, and appellants admit in the replication that they learned this in March, 1969, sixteen months before the suit was filed. The replication fails to allege how the facts of fraud were discovered; and it also fails to allege when they were discovered.

Appellants concede in brief that they rely on Tit. 7, § 42, Code 1940, to remove the bar of the statute of limitations. It provides:

"In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

In Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286, where a replication to a plea of the one-year statute of limitations was demurred to, this court quoted with approval from Gordon v. Ross, 63 Ala. 363, as follows:

"A party, availing himself of this statute, would be required to aver, with precision, the facts and circumstances constituting the fraud—how and when these facts were discovered, what prevented a discovery before the bar of the statute was complete—and to acquit himself of all knowledge of facts which ought to have put him on inquiry."

This court also said:

"Broadly speaking, the facts constituting the fraud are to be considered as discovered when they ought to be discovered, when such facts come to knowledge as provoke inquiry in a person of ordinary prudence, and which, if followed up, would lead to the discovery of the fraud. But this rule is not to be so applied as to defeat the ends of the statute. Fraud, in the nature of it, implies that the party has been misled and that, by the wrong of another, he is accepting and resting in a false sense of security. A party thus situated is not required to presume fraud or suspect it, until something comes to him leading a just person to suspect and make inquiry."

In Fletcher v. First National Bank of Opelika, 244 Ala. 98, 11 So.2d 854, the statute of limitations was raised as a defense, and after quoting Tit. 7, § 42, the court traced the history of the law both prior and subsequent to the statute and quotes, in part, from Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606, as follows:

"The statute referred to does not require actual notice, since a fraud is dis-

covered within the contemplation of the law when it is readily discoverable or when a party is put upon notice thereof.

\* \* \* \* \* \*

"When a party relies on his ignorance of facts material to his right as an excuse for his laches and delay in asserting them, he must show by distinct averments why he was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry, and must show how and when he first acquired a knowledge of the facts. James v. James, 55 Ala. 525. This principle was announced in Scruggs v. Decatur Mineral & Land Co., 86 Ala. 173, 5 So. 440, thus:

" 'Laches will not be imputed, until after discovery of their rights. But mere ignorance of right, without excusing or explaining its reasonable continuance, is insufficient. \* \* \*' "

 Fraud is deemed to have been discovered when it ought to have been discovered. Facts which provoke inquiry in the mind of a man of reasonable prudence, and which, if followed up, would have led to a discovery of the fraud, constitute sufficient evidence of discovery. Butler v. Guaranty Savings & Loan Ass'n, 251 Ala. 449, 37 So.2d 638, and cases there cited. Many of these principles are stated in State Security Life Ins. Co. v. Henson, 288 Ala. 497, 262 So.2d 745.

Here, the replication failed (1) to aver with precision the facts and circumstances which allegedly were not discovered and to which appellants allegedly were defrauded, (2) to aver how or when these facts were discovered, (3) to aver what prevented these facts from being discovered before the bar of the statute became complete and (4) failed to aver facts acquitting appellants of all knowledge of facts which ought to have put them on inquiry.

The trial court did not err in sustaining Shenandoah's demurrer to appellants' replication.

There was no evidence to show any fraud or any notice of fraud on the part of the defendant, Shenandoah.

The verdicts and judgments against Hightower and Thompson are not disturbed, and the same is true of the verdicts and judgments in favor of the defendant, Shenandoah Life Insurance Company.

Affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and McCALL, JJ., concur.