Plaintiff, James Gray, appeals from a summary judgment for defendants, Great American Reserve Insurance Company (hereinafter "Great American") and John L. "Brownie" Sides, in an action which included counts for breach of contract and bad faith refusal to pay an insurance claim.
James and Hazel Gray signed a joint application for health insurance coverage with Great American on April 12, 1984. The application was taken by John L. Sides while meeting with the Grays at their residence and place of business, the Moon Winx Lodge. At that time, Sides was not an agent for Great American. Plaintiff alleges that when asked the date coverage would begin, Sides responded that coverage would begin upon payment of the first month's premium; Sides denies making such a statement. Gray alleges that the statement was made and that the Grays then tendered to Sides a check for $188.50.
Sides mailed the Grays' application to Southeastern Agency in Mobile, Alabama, along with his application to become an agent to sell insurance for Great American. The agent's application, with the attached application for insurance for the Grays, was then sent to Markman Agency in Dallas, Texas. Markman Agency is a company which markets the products of North American Consumer Alliance ("NACA") outside the State of Texas. The medical insurance policy which the Grays applied for was produced by Great American for NACA members.
An agreement whereby Sides became a "broker" for Great American was consummated on May 22, 1984. Great American *Page 604 
began to process the Grays' application on June 1, 1984. On June 6, 1984, the application was returned by Great American, and Sides was instructed to obtain NACA dues from the Grays. A check for the NACA membership dues dated June 18, 1984, along with the Grays' application and premium check, was returned to Southeastern Agency, which, in turn, forwarded the dues to Great American on June 29, 1984.
On June 27, 1984, Mr. Gray was injured when he was thrown from a horse. Subsequently, he received treatment for his injuries at West Alabama General Hospital. Mrs. Gray notified Sides of the claim. Sides then called Great American and obtained claim forms and also obtained what he told the Grays was a policy number. The vice president for new business for Great American testified in her deposition that the company issues a pending policy number to all applications to be used as a file number and for the internal processing of the application.
On October 9, 1984, Mr. Gray received a letter from Great American stating that, since no policy had been issued prior to his injury, benefits would be denied. The underwriter's worksheet reflects that the application was received as new business on July 5, 1984. Great American processed the premium check on July 7, 1984, and placed it in a suspense account of Great American, where it was to remain until the application had been processed and a decision made on whether a policy would be issued.
On July 10, 1984, Great American sent an application amendment to Sides requesting further information on Mrs. Gray. The amendment was signed by the Grays on July 25, 1984, and received by the underwriting department on July 30, 1984.
On July 20, 1984, Great American received Mr. Gray's first claim for medical benefits; however, this claim was routed to the wrong department and was returned to the medical services provider. The claim was then returned to Great American and received by the benefits department on August 16, 1984. The Grays' application file could not be located, and the processing of the claim was delayed.
On September 25, 1984, Kent Caswell, senior claims examiner for Great American, received a telephone call from the business office of West Alabama General Hospital inquiring about the status of Mr. Gray's claim for benefits. Caswell informed the hospital that no policy had been issued and, therefore, that the claim would be denied. On that same day, the hospital called back and told Caswell that it had noted in its file a "verification of coverage" given to them by Sides under a Great American policy. On September 27, 1984, Caswell wrote to Mr. Gray, informing him that his claim for medical benefits would be denied.
On October 18, 1984, Mr. Gray filed suit against Great American and Sides for breach of an insurance contract, bad faith refusal to pay benefits under that insurance contract, and intentional and unintentional fraud and misrepresentation. On April 12, 1985, Gray amended his complaint to add counts alleging negligent and/or wanton failure to procure insurance for the plaintiff and negligent and/or wanton failure to process plaintiff's application in a diligent manner.
On April 24, 1985, defendants filed a motion for summary judgment on all issues. Defendants later withdrew their motion as to the count for fraud. On January 13, 1986, the trial court issued an order granting the motion for summary judgment on behalf of defendants as to the counts for breach of contract and bad faith refusal to pay an insurance claim and denying the motion as to the two negligence counts. The court entered a Rule 54 (b), A.R.Civ.P., order making the summary judgment final, and Gray appeals.
In Sho-Me Motor Lodges v. Jehle-Slauson Construction Co.,466 So.2d 83, 88 (Ala. 1985), we recognized the standard of review for a summary judgment as it is set out in Rule 56 (c), A.R.Civ.P.:
 "Summary judgment is authorized only when the moving party clearly shows that there is no genuine issue as *Page 605 
to any material fact and the movant is entitled to a judgment as a matter of law. . . ."
In Missildine v. Avondale Mills, Inc., 415 So.2d 1040, 1042
(Ala. 1981), the Court recognized:
 "The burden for sustaining a motion for summary judgment is substantially increased by the scintilla of evidence rule. This rule requires that no summary judgment be granted if there is a scintilla of evidence to support the non-movant's position. . . . The scintilla of evidence rule requires merely a gleam, glimmer, spark, the least bit, or the smallest trace in support of the non-moving party. . . ." (Citations omitted.)
Since the trial court granted summary judgment, it must have determined that there was not a scintilla of evidence supporting Gray's allegation of a contract of insurance upon which a breach could be based.
Gray first argues that, by signing the application presented to him by Sides and paying the first month's premium, a contract of insurance sufficient to support his breach of contract claim was created. His theory is that the application constituted an offer made by Great American through its agent, Sides, and accepted by him. We cannot accept this argument.
It is well established that "an application for insurance is a mere offer which does not ripen into a contract unless, and until, it is accepted by the insurer." Gillilan v. FederatedGuaranty Life Ins. Co., 447 So.2d 668, 671-72 (Ala. 1984). Under the express terms of the application, it is clear that no such acceptance occurred.
The application, which was signed by Gray, provides:
 "AGREEMENT: I hereby agree that (1) all statements and answers contained herein are full, complete, and true to the best of my knowledge and belief, (2) the insurance hereby applied for will not be considered in force until a certificate is issued and the first full premium paid while I am alive and in good health and other conditions remain as described in this application, and (3) acceptance of any certificate issued as a result of this application shall constitute notification by the undersigned of any corrections, additions or changes noted in the space designated for `Home Office Endorsements and Corrections,' except there can be no change of amount, classification of risk, plans of insurance or benefits unless first agreed to in writing if so required by regulations or statutes of the state wherein this application is dated."
Gray contends that it was reasonable for him to believe that the literature left with him after he submitted his application constituted a certificate. In support of this contention, he points out various references in this literature to "the effective date of this certificate."
The construction of a written application for insurance is a question of law for the court. See generally, 44 Am.Jur.2dInsurance § 2034 (1982).
Along with the references made in the application literature to "this certificate" are the following statements:
 "The information provided here is intended only to serve as a summary of the insurance coverage. It does not state all of the policy terms and conditions, including those required by law. Confirmation of all understandings or impressions about the insurance should be made from examination of the complete policy contract, particularly for policy limitations, exclusions, reductions, definitions and effective dates. Please request any additional information or clarification required.
". . . .
"NOTICE TO APPLICANT
 "PART ONE — Federal Law and some State laws require that notice of investigation and notice of company practices be given to persons applying for insurance.
 "In connection with this application, personal information may be collected from, and in limited circumstances disclosed without prior authorization to, *Page 606 
third parties. In making this application for insurance to Great American Reserve Insurance Company, it is understood that an investigative consumer report may be prepared whereby information is obtained through personal interviews with you, your neighbors, friends, or others with whom you are acquainted, or from doctors, hospitals, insurance institutions or insurance support organizations. You may request to be interviewed in connection with this report. You have a right upon written request to receive additional detailed information about the nature and scope of this investigation to learn what information we have, obtain copies and request amendments or corrections. Upon request, we will furnish you with a description of the procedures whereby you can exercise these rights. To keep you informed of our other insurance products and services, your name, address, date of birth and phone number may be used by our affiliates.
 "PART TWO — Information regarding your insurability will be treated as confidential. Great American Reserve Insurance Company may, however, make a brief report thereon to the Medical Information Bureau, a non-profit membership organization of life insurance companies, which operates an information exchange on behalf of its members. If you apply to another Bureau member company for life or health insurance coverage, or a claim for benefits is submitted to such a company, the Bureau, upon request, will supply such company with the information in its file.
 "Upon receipt of a request from you, the Bureau will arrange disclosure of any information it may have in your file. (Medical information will be disclosed only to your attending physician.) If you question the accuracy of information in the Bureau's file, you may contact the Bureau and seek a correction in accordance with the procedures set forth in the Federal Fair Credit Reporting Act. The address of the Bureau's information office is Post Office Box 105, Essex Station, Boston, Massachusetts 02112, telephone number (617) 426-3660. Great American Reserve Insurance Company may also release information in its file to its reinsurers or other life insurance companies to whom you may apply for life or health insurance, or to whom a claim for benefits may be submitted. (See Notice to Applicant — Part One)."
Applying the accepted rules of construction, we note that a court should avoid taking a single sentence and attempting to construe it in isolation; instead, it should construe the sentence as part of the whole and in connection with other provisions in the application. See Turner v. United StatesFidelity Guaranty Co., 440 So.2d 1026 (Ala. 1983); CommercialStandard Ins. Co. v. General Trucking Co., 423 So.2d 168 (Ala. 1982).
When this application and the accompanying literature are construed as a whole, it is clear that the reference in the literature to "this certificate" is to a certificate that will be issued in the future, after the insurer has completed its investigation and determined the insurability of the applicant. That being the case, it cannot be disputed that no certificate was issued by Great American and, thus, that no contract of insurance was created by acceptance of this written application.
Gray argues that, notwithstanding the fact that no certificate was issued by Great American, sufficient evidence of a contract to support his breach of contract claim exists because of his assertion that Sides orally represented to him that coverage would begin immediately upon his payment of the first month's premium. Sides denies making such a statement. Gray cites this Court's decision in National Security Fire Casualty Co. v. Vintson, 414 So.2d 49 (Ala. 1982), in support of his position. In Vintson, it was said:
 "We hold that the narrow situation, such as the one in this case, where the plaintiff claims misrepresentation in the inception of the contract, i.e., where the agent misrepresents the moment in time that the policy will take effect, the plaintiff *Page 607 
has the right to present his case to the jury under either a breach of contract theory or the tort of misrepresentation or both, because the same facts could support a finding that the contract did exist, even though the agent misrepresented the time of its inception."
414 So.2d at 51. Vintson, however, is factually distinguishable from the present case.
In Vintson, the agent who allegedly made the misrepresentation concerning the moment in time that the contract would take effect clearly had the authority, as a general agent, to bind the insurer to the agent's contract of insurance or to issue policies or to accept risks. SeeWashington National Ins. Co. v. Strickland, 491 So.2d 872 (Ala. 1985). See also, § 27-14-18 (a), Code of 1975. However, in the present case, it is clear that Sides is not a general agent of Great American; instead, he is an independent broker of insurance. In fact, it is undisputed that at the time Sides allegedly made the oral misrepresentation, there was no actual agency relationship between Sides and Great American in existence. Although an express relationship between Sides and Great American was later created, it expressly limited Sides's authority to the solicitation and procurement of "applications for insurance." The broker agreement expressly provided that he had no authority: "(a) to alter, modify, change, waive any forfeiture of or waive performance of any of the terms, rates or conditions of Company's policies or contracts" or "(b) to make representations not strictly in accordance with the provisions of the policies and contracts issued by the Company."
As an independent broker, Sides had no authority to bind Great American in contract. MJM, Inc. v. Casualty IndemnityExchange, 481 So.2d 1136 (Ala. 1985); Strickland, supra.
Therefore, the alleged oral assurance given by Sides cannot serve as evidence of a contract between Gray and Great American. MJM, Inc., supra.
Gray's argument that Great American ratified Sides's oral declaration by processing his application is also without merit.
It is clear that when Great American processed the application it was unaware of the alleged oral declaration. Gray has not offered a scintilla of evidence to the contrary. An alleged principal cannot ratify an agreement which has not been brought to his knowledge. See W.T. Rawleigh Co. v. Hannon,245 Ala. 266, 16 So.2d 800 (1944); Moore v. Ensley, 112 Ala. 228,20 So. 744 (1895).
Similarly, Gray has failed to produce even a scintilla of evidence to support his argument that Sides was acting with the apparent authority to orally bind Great American to a contract. There is no statement in either the application or its accompanying literature that is capable of being construed as such a declaration of authority.
An agent's apparent authority must be based upon the conduct of the principal and not that of the agent. Johnson v.Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1973). Even a person dealing with a known agent is not authorized to blindly trust the agent's statements as to the extent of his powers. Id.
It is axiomatic that a party seeking to maintain an action for a bad faith refusal to pay on a contract of insurance must necessarily show that there was an insurance contract in existence. MJM, Inc., supra. Because Gray has not produced a scintilla of evidence to support his allegation that an actual contract of insurance existed, his bad faith claim must also fail.
In light of the foregoing, it is clear that the trial court properly granted summary judgment in favor of the defendants on the breach of contract and bad faith claims.
The judgment, therefore, must be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur. *Page 608