These appeals are from a judgment on a jury verdict in favor of Jim Bailey. The judgment, as modified, reduced the amount of three mortgages held by Secor Bank and covering three lots that Jim Bailey had purchased from TangleCreek Associates. At the closing on the lots in question, James Davenport, a representative of TangleCreek, represented to Bailey that the lots he was purchasing had been released from the mortgage. Bailey contends that at the closing he saw Secor's mortgage releases on the three lots in question. The jury determined that Davenport had been the agent of Secor Bank during the closing with Bailey and, therefore, that Secor Bank should bear the loss occurring from Davenport's failure to, in fact, satisfy the mortgages with the funds given to him by Bailey.
At the outset, we note that "[g]enerally, a dispute over the existence of an agency relationship involves a question of fact for the jury. Cordes [v. Wooten, 476 So.2d 89, 91 (Ala. 1985)]."Merrell v. Joe Bullard Oldsmobile, Inc., 529 So.2d 943, 945
(Ala. 1988). In addition, "An agent's apparent authority must be based upon the conduct of the principal and not that of the agent. Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389,281 So.2d 636 (1973)." Gray v. Great American Reserve Ins. Co.,495 So.2d 602, 607 (Ala. 1986). The evidence reveals that TangleCreek Subdivision consisted of 30 lots and that Secor Bank had made a loan to TangleCreek Associates in the amount of $1.4 million to finance the construction of roads and other improvements in that subdivision. Davenport contacted Bailey with regard to three of the lots in TangleCreek; Bailey agreed to purchase the lots for $55,900 each, and he made a $30,000 down payment. Subsequently, Davenport informed Bailey that he would reduce the price of each lot by $900 if Bailey would make an additional down payment of $15,000. Bailey agreed and made the additional down payment.
Bailey contends that he was informed by Davenport of the need to close the loan on the lots on June 1, 1988. He testified that the closing was held in Davenport's office, and that, although holding the closing in Davenport's office was unusual, Davenport had represented to him that he was acting as the agent of Secor Bank at the closing. Bailey further testified that he saw the documents purporting to release the lots from mortgages held by Secor Bank at the closing, but returned them to Davenport, at his request, in order for them to be recorded by the bank. There was testimony by another lot purchaser, Mr. Hartman, who also stated that his closing was held in Davenport's office on June 1, 1988; Hartman further testified that he received his releases on that date. There is disputed evidence as to whether the bank relinquished any of the releases to Davenport before obtaining checks relating to parcels covered by the releases. A bank employee testified that she received the checks to cover an amount of the mortgage debt sufficient to secure the release of all lots, except Bailey's lots, prior to delivery of the releases, and that the releases on Bailey's lots never left the bank file; however, Mr. Hartman testified that he received his releases at the same time he delivered the checks to Davenport. Because there was no employee representative of Secor Bank at the closing, receipt of the checks by the bank prior to the relinquishment of the releases is in dispute, and because Bailey contends that he saw the releases at the closing, there is also a dispute as to whether his releases were, in fact, ever delivered to Davenport.
There was evidence tending to show that Davenport was the agent of Secor Bank at the time of the closing with Bailey. Bailey's testimony that he saw the lot releases at the closing, coupled with the disputed testimony regarding the delivery of *Page 902 
the other lot releases, and the timing of the delivery of the checks, certainly created a jury question as to whether Davenport was acting as Secor Bank's agent. If the jury believed that Secor Bank did, in fact, relinquish the releases prior to satisfaction of the mortgages, then the jury could have inferred that Secor Bank, by its conduct, gave Davenport apparent authority to act on its behalf in receiving payment for Bailey's lots.
Following the trial, the judge granted Secor Bank's motion for a partial judgment notwithstanding the verdict with regard to Bailey's $45,000 down payment to Davenport. Bailey cross appeals, and we affirm. There is simply no evidence indicating that Davenport was acting as Secor Bank's agent when the initial $30,000 down payment was made, nor was there evidence supporting the finding of such an agency relationship when the additional $15,000 down payment was given to Davenport. Therefore, the trial judge held that Bailey owed Secor Bank $45,000, plus interest, in order to complete payments on the lots in question. Calculating an interest rate of 10%, the trial judge determined that Bailey owed Secor Bank $52,782.98 as of June 1, 1988. Although there was no accounting, the parties clearly consented to the trial court's determination of the exact amount owed to Secor Bank by Bailey. In light of these facts, we will not disturb the ruling of the trial court.
For the foregoing reasons, the judgment is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.