Brannan Guy, P.C., and Gunter Guy, Jr. (hereinafter jointly referred to as "the defendants" and individually referred to as "the firm" and "Guy"), appeal the trial court's summary judgment for the City of Montgomery (hereinafter referred to as "the City"). We affirm.
On November 13, 2000, the City filed a complaint seeking a judgment declaring what amount, if any, the City was due to be reimbursed for payments made to the defendants for legal services performed by them, and declaring what rate the defendants were entitled to receive from the City for legal services in pending cases in which the defendants were involved.[1] The City's complaint alleged that the City had retained the defendants before April 2000 to perform legal services at a rate of $95 per hour for out-of-court work and $120 per hour for in-court work; that on or about April 2000, the defendants began submitting bills to the City reflecting an hourly rate of $175; and that the City did not discover that it had been overcharged by the defendants until approximately September 2000. The City further alleged that the defendants had unilaterally increased their legal fees without the authorization or consent of the City and without notifying the City of their intent to do so; that upon discovering its overpayment to the defendants, the City had notified the defendants that it was entitled to be reimbursed *Page 916 
and that it intended to use that reimbursement to offset future charges; and that the defendants had responded by writing letters to the City arguing that they were entitled to the fees based on the $175 hourly rate.
On January 5, 2001, the defendants filed an answer stating that on or about February 20, 2000, Guy had withdrawn as counsel for the City in all the cases he was handling for it and for various city officials, with the exception that he would continue to represent three former employees of the City: former Mayor Emory Folmar, former Fire Chief Wayne Grier, and former Deputy Fire Chief J.L. Fulmer. The defendants stated that those former employees had requested that Guy continue to represent them in cases naming them as defendants in their individual capacities based upon a conflict of interest the former employees believed to exist between them and the current administration; that the City was obligated to defend and indemnify the three former employees; and that Guy had made the City aware of the former employees' request and had filed notices of appearance to represent them in their individual capacities. The defendants further stated that, upon their information and belief, the City had employed two attorneys to represent it at hourly rates of $175 and $200; that when Guy filed notices of appearance for the three former employees, he informed Tim McCollum, who then served as city attorney, that his billing rate in those cases would be $175 per hour; that McCollum never objected to this rate and the City paid this rate for services billed on six occasions from March 2000 to August 2000; and that the City therefore had notice of the $175 per hour rate before August 2000 and was obligated to pay outstanding bills submitted at that rate.
On April 24, 2001, the defendants filed a motion for a summary judgment; attached to the motion were affidavits by McCollum and Guy and a supporting brief. The defendants argued that, pursuant to § 11-47-24, Ala. Code 1975, the City was obligated to defend and indemnify the three former employees in ongoing litigation arising out of their official duties; that a unilateral contract came into existence when Guy made an offer to McCollum to represent the former employees at a rate of $175 per hour, the lower of the two rates the City was paying attorneys to represent it in the same litigation in which former Mayor Folmar was involved; that there was an acceptance of the offer, evidenced by McCollum's allowing the defendants to represent the former employees and the City's paying for services billed on six occasions; and, in the alternative, that the defendants were due to be paid an amount of $39,943.08, on the theory of quantum meruit, or the City would be unjustly enriched.
On May 18, 2001, the City filed a cross-motion for a summary judgment and a memorandum of law with supporting affidavits and exhibits.[2] The City argued that McCollum did not have the authority to *Page 917 
accept Guy's offer to represent the three former employees at an increased rate of $175 per hour and that this authority belonged solely to Mayor Bobby Bright; that upon taking office, Mayor Bright had set the approved hourly rate for legal services at $90 for out-of-court time and $120 for in-court time, with the exception of two attorneys for whom then Mayor Folmar had authorized a higher rate before he left office, and that in those suits involving those two attorneys, Folmar, before leaving office, had authorized Guy to be paid only $95 per hour; that a letter dated February 18, 2000, was sent to Guy stating Mayor Bright's authorized rate of $90 per hour, but the firm began billing at the $175 per hour rate in March 2000. The City further asserted that McCollum never brought Guy's request to charge a fee that exceeded the authorized amount to the attention of Mayor Bright, and that the City's risk manager, Jeff Downes, became aware of the unauthorized charges only when he found that the City had been charged significant legal fees in certain cases and requested copies of bills that had been submitted to RSKCO Claims Services, Inc., the administrator of the City's self-insured liability program. The City stated that it thereafter applied the alleged overcharges against monthly bills received from the firm, and it contended that the defendants owed the City a balance of $4,607.63. On May 23, 2001, the City filed a response to the defendants' motion for a summary judgment; in its response it adopted the statement of facts, memorandum of law, and exhibits filed with its cross-motion for a summary judgment.
On July 31, 2001, the trial court entered an order that stated, in pertinent part:
 "The question presented to this Court for decision involves an attorney's fee dispute between the City of Montgomery, Brannan Guy, P.C., and Gunter Guy. The core issue for decision by this Court is whether Gunter Guy, a member of Brannan Guy, P.C., was legally authorized to perform legal services for the City of Montgomery at an hourly rate of $175.00 per hour, commencing in March of 2000, for his representation of three former employees of the City of Montgomery in various lawsuits, or whether Brannan Guy, P.C., and Gunter Guy were authorized to only charge $90.00 per hour out of court and $120.00 per hour in court as expressly authorized in writing by the City of Montgomery and/or as ordered and directed by the Mayor for the City of Montgomery. In making its decision, the Court has read and studied the affidavits and evidentiary submissions and the briefs and legal authorities cited by the parties to this action and has considered the oral arguments made on said motions.
 "After careful review of the facts and evidence, the Court finds that it is undisputed from the evidence that, at all times material to this lawsuit, only the Mayor of the City of Montgomery had the authority to set the rates for attorneys who were performing services for not only the City of Montgomery, but also for agents and employees of the City of Montgomery for whom the City of Montgomery was providing a legal defense. The Court further finds that Defendants knew or should have known that only the Mayor of the City of Montgomery had the authority to set the hourly rates for attorneys representing the City of Montgomery and its agents or employees. The uncontraverted evidence makes clear that the Mayor of the City of Montgomery, at no time, approved, verbally, or in writing, the Defendants' hourly charge of $175.00 an hour.[*]
 "The evidence presented to the Court establishes, moreover, that the only *Page 918 
written authorization for the setting of attorney's fee rates was issued at the direction of the Mayor of the City of Montgomery expressly advising attorneys representing the City of Montgomery and its employees that the amount that would be paid for their representation would be at the rate of $90.00 per hour out of court. It is undisputed that Brannan 
Guy, P.C., and Gunter Guy received a copy of that memorandum. The evidence is further undisputed that the Mayor of the City of Montgomery subsequently expressly authorized a $120.00 per hour rate for time spent by attorneys in court.
 "Based on these uncontraverted facts, the Court finds that the Defendants were not authorized to change their hourly rate and increase it to $175.00 per hour, and that such action by the Defendants in increasing their charges without authority did not create a unilateral contract. The Court further finds that the City's having paid such sums for a period of time was done innocently and did not constitute ratification. The Court finds no merit in the Defendants' argument that the former City Attorney had `apparent' authority which would somehow bind the City of Montgomery to pay an increased hourly rate for Gunter Guy and Brannan Guy, P.C.[**]
 "The Court further finds that the City of Montgomery was justified, upon discovering the overcharge, to begin a process of recouping the overcharge by setting off the amount of the overcharge against subsequent bills submitted by Brannan Guy, P.C. This being the case, and since substantially all the monies have been recouped by the City, the Court finds that the City has been substantially and adequately reimbursed for the amount of overcharges so that no further action needs to be taken by this Court, and judgment does not need to be entered in favor of the City for recoupment of any remaining overcharges.
 "Therefore, based on the undisputed facts and the applicable law, it is ORDERED, ADJUDGED, and DECREED as follows:
 "1. Brannan Guy, P.C., and Gunter Guy were not entitled to change and increase their hourly rates for legal services performed for the City of Montgomery and/or its employees or former employees to $175.00 per hour.
 "2. The City of Montgomery does not owe any further or additional sums for costs or attorney's fees to Brannan Guy, P.C., and Gunter Guy, and that said Defendants have been paid in full for all costs and services performed.
 "3. The Court further finds that the City of Montgomery has been adequately reimbursed by setoff for any overcharges relative to bills submitted by Brannan Guy, P.C., and Gunter Guy; therefore, no additional sums are due and owing to the City of Montgomery from the Defendants.
 "4. That this Order disposes of all issues presented to the Court, and the Court has declared the rights and remedies and obligations of the parties and that the costs of this proceeding shall be taxed against the Defendants for which execution may issue.
 "[*] Defendants submitted an affidavit of the former City Attorney to support their claim of entitlement to a fee of $175.00 an hour. While the Court specifically finds that the former City Attorney had no authority to authorize excessive attorney's fees, the Court notes that the affidavit submitted by the Defendants does not contend that the former City Attorney ever attempted to change Defendants' hourly rates.
 "[**] At the hearing held on the summary judgment motions, Defendants did not seriously contend that the former City Attorney *Page 919 
had actual authority to increase Defendants' hourly rates."
The defendants appealed to this Court, arguing that the trial court erred in entering a summary judgment for the City because, they argue, (1) McCollum had the actual authority to agree to the $175 per hour rate; (2) the City was unjustly enriched by the trial court's failure to apply the theory of quantum meruit; (3) a unilateral contract existed between the defendants and the City; and (4) if we determine that he had no actual authority, the city attorney had the apparent authority to agree to the increased rate and the City ratified his actions.
Our review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
The defendants first contend that the trial court erred in entering a summary judgment for the City because, they say, McCollum had the actual authority to agree to Guy's $175 per hour rate. This argument apparently was not made to the trial court. The record does not contain a transcript of the arguments made at the hearing on the motions for a summary judgment. The defendants argued in their motion for a summary judgment only that McCollum had "allowed" Guy to represent the former employees and that the City had thereafter paid the $175 per hour fee on six occasions. Further, McCollum's affidavit does not state that he had the authority to approve the increased rate; his affidavit stated that he "did not question Gunter Guy's rate for defending Emory Folmar and Chiefs Grier and Fulmer."
Moreover, the trial court's order states that it was undisputed that only Mayor Bright had the authority to approve Guy's hourly rate and that the defendants had not seriously argued at the hearing on the summary-judgment motions that the city attorney had the actual authority to do so. In the absence of a transcript of the summary-judgment hearing or any other evidentiary showing, the record before this Court can serve only to support the trial court. This Court has stated:
 "[W]e must assume that the trial court had before it evidence to sustain every finding of fact made and that it made those findings necessary to support the judgment. Even if we had been favored with a transcript of the evidence before *Page 920 
the trial court, this Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal."
Totten v. Lighting Supply, Inc., 507 So.2d 502, 503 (Ala. 1987) (citing Johnson v. Fishbein, 289 Ala. 328, 267 So.2d 405 (1972)). While the defendants now contest the trial court's statement that they did not seriously contend that McCollum had the actual authority to approve Guy's submitted rate on appeal, nothing before this Court supports that position; accordingly, we presume that the trial court was correct in its statement. Totten, supra.[3]
The defendants further argue that the trial court erred by not applying the theory of quantum meruit, and that it thereby permitted the City to be unjustly enriched. In support of their argument, the defendants state the general proposition of law that a municipality has a duty to indemnify and defend its employees, citing § 11-47-24, Ala. Code 1975, and note the potential conflict that may arise when a municipality directs the defense of an employee, citing Oladeinde v. City ofBirmingham, 118 F. Supp.2d 1200 (U.S.D.C. 1999). They also rely on the following legal principle relating to the issue of compensation by quantum meruit:
 "It is well settled that, provided a contract is within the scope of its corporate powers, a municipal corporation may be held liable on an implied contract, either where the contract is implied in fact from corporate acts, or is implied in law, to prevent the municipality from enriching itself by accepting and retaining benefits without paying just compensation therefor.
". . . .
 "It is the settled law of this State that where one knowingly accepts services rendered by another, and the benefit and the result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered."
Hendrix, Mohr Yardley, Inc. v. City of Daphne, 359 So.2d 792, 795
(Ala. 1978) (citations omitted).
Generally, recovery on a theory of quantum meruit arises when a contract is implied; the law implies a promise on the party knowingly accepting the benefit of services provided by another to pay a reasonable value for those services. See City of Daphne, supra; Glenlakes RealtyCo. v. Norwood, 721 So.2d 174 (Ala. 1998). When attorney fees are calculated on a quantum meruit basis, the court must determine and award the reasonable value of such fees. Triplett v. Elliott, 590 So.2d 908
(Ala. 1991) (the trial court properly determined a quantum meruit recovery of attorneys fees by employing the factors for a reasonable attorneys fee set out in Peebles v. Miley, 439 So.2d 137 (Ala. 1983)). Thus, even if we accepted the defendants' argument that they are entitled to a recovery under a theory of quantum meruit, we would still, based on the record before us, conclude that the amounts of $90 and $120 *Page 921 
per hour represented the reasonable value of the services rendered. The record contains undisputed affidavit testimony that Guy was receiving $95 per hour for his services in the same cases before Mayor Folmar left office and that he had received notice of Mayor Bright's directive that attorneys providing legal services to the City and its employees would be reimbursed at $90 per hour. (Mayor Bright subsequently corrected this directive to explain that the $90 per hour rate was for out-of-court services and a rate of $120 per hour was authorized for in-court services.) In their brief to this Court, the defendants also state:
 "The evidence before the trial court was that it was undisputed that the City of Montgomery had determined that a reasonable hourly rate for the defense of these matters was either [$175] per hour, which was being paid to Mr. David Whiteside to represent the City of Montgomery, or that as much as [$200] an hour was reasonable based upon the City of Montgomery hiring and paying Mrs. LaVeeda Battle at that hourly rate to represent the City and Chief John Wilson in his individual capacity."
The fact that two other attorneys were contractually authorized to charge fees of $175 and $200 per hour, respectively, does not establish those amounts as reasonable, nor does it create any genuine issue of material fact as to the reasonable value of the defendants' services. The evidence submitted to the trial court established that attorneys who chose to represent the City or its employees would be reimbursed for their services at $90 or $120 per hour. See Peebles, 439 So.2d at 141 (adding as a criteria to be considered in determining the reasonableness of an attorney's fee "[t]he fee customarily charged in the locality for similar legal services"). Thus, the defendants have not shown that the trial court's determination of the compensation they were due was erroneous under the facts of this case.
We also note that the trial court could have, on the record before it, determined that an express unilateral contract existed between the City and the defendants based upon the defendants' receipt of the letter setting the hourly rates the City would pay for legal services, which could be considered an express offer of payment in exchange for the performance of services, and that the defendants' subsequent performance of services constituted an acceptance. When an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails. See Betts v. McDonald's Corp., 567 So.2d 1252, 1255 ("`It has long been recognized in Alabama that the existence of an express contract . . . generally excludes an implied agreement relative to the same subject matter.'") (quoting Vardaman v. Florence City Bd. of Educ.,544 So.2d 962, 965 (Ala. 1989)). Whether this analysis is used, or the reasonableness of the defendants' fees is analyzed under a quantum meruit theory, the defendants have failed to establish that the judgment is erroneous. Further, while the trial court's order did not explicitly address the defendants' quantum meruit argument, "[w]e can affirm a judgment on a basis not asserted to the trial court, and we can affirm a judgment if we disagree with the reasoning of the trial court in entering the judgment, as long as the judgment itself is proper." ProgressiveSpecialty Ins. Co. v. Hammonds, 551 So.2d 333, 337 (Ala. 1989) (citingSmith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala. 1988)).
The defendants' final two arguments are that the trial court erred in entering a summary judgment for the City because, they argue, (1) if McCollum did not have the actual authority to bind the City to a *Page 922 
bilateral contract, then a unilateral contract existed between the defendants and the City, and (2) McCollum had the apparent authority to bind the City, and the City thereafter ratified the agreement as to Guy's fees by paying the bills submitted by the firm at the $175 hourly rate on six occasions.
In support of their unilateral-contract argument, the defendants first cite a section of Act No. 618, Ala. Acts 1973, which we have already concluded was not submitted to the trial court for consideration and which, therefore, cannot be properly considered by this Court on appeal.Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala. 1992). The defendants' remaining citation to authority is to SouthTrust Bank v. Williams,775 So.2d 184 (Ala. 2000), from which they paraphrase statements that "[a] unilateral contract is a contract in which a promise is given in exchange for an actual performance by the other party," and "in a unilateral contract, there is no bargaining process or exchange of promises between the parties as in a bilateral contract, but a party makes an offer, and such is accepted by the performance of the other party."
As this Court recognized in Williams, "[t]he quintessential example of a unilateral contract is, perhaps, the contract for at-will employment." 775 So.2d at 188 n. 3 (citing Ex parte McNaughton, 728 So.2d 592, 603
(Cook, J., dissenting)). In the at-will employment context, this Court has stated that "only those . . . communications meeting the traditional requirements for the formation of a unilateral contract — an offer, communication, acceptance, and consideration — will bind the parties." Ex parte Amoco Fabrics Fibers Co., 729 So.2d 336, 339 (Ala. 1998). We therefore examine the communications between Guy and McCollum to determine whether a unilateral contract existed.
The relevant facts, viewed in a light most favorable to the defendants, Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359
(Ala. 1993), are that after McCollum had sent out the letter at the direction of Mayor Bright informing Guy that the City would pay $90 per hour for legal services performed for the City and its employees, Guy withdrew from all cases in which he represented the City, and the firm submitted a final bill to the City reflecting the $90 hourly rate. Following Guy's notice of withdrawal, three former employees of the City contacted Guy to inform him that they wanted him to continue representing them in their individual capacities, based on an alleged conflict of interest that existed between them and the current administration. Guy agreed to represent the former employees at the rate of $175 per hour. The defendants state that Guy subsequently communicated to McCollum that the three former employees wanted him to represent them in their individual capacities and that he would be charging a rate of $175 per hour. Although we do not consider this to be a clearly communicated offer, but rather a statement of what Guy intended to charge other clients, we will consider whether McCollum had the apparent authority to accept this "offer" and whether the City ratified any agreement by its paying six bills submitted by the firm based on that hourly rate.
The record, as stated earlier, does not contain any evidence showing that McCollum had the actual authority to accept and approve Guy's "offer" of the $175 per hour rate. As to whether McCollum had the apparent authority to accept or approve the "offer," the defendants rely on this Court's statement that the "[a]pparent authority of an agent arises from the acts of the principal, either by omission or commission, and such authority is implied *Page 923 
where the principal passively permits the agent to have the authority to act on his behalf." Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297,304 (Ala. 1986) (citing Treadwell Ford, Inc. v. Courtesy Auto Brokers,Inc., 426 So.2d 859 (Ala.Civ.App. 1983)). In arguing that McCollum had the apparent authority to bind the City, the defendants point out that the letter informing Guy of the $90 per hour rate was written by McCollum "at the request" of Mayor Bright and that the letter stated that the addressee, if he or she had questions, should contact McCollum. The defendants, in brief, conclude that the letter "gave every indication that McCollum, whose budget the funds would be paid from, had the authority to set the amount of the hourly rate to be paid, and if you had a question, call him."
We disagree with the defendants' assertion that they were justified in the belief that McCollum had the apparent authority to accept the defendants' "offer" to perform legal services at an increased rate. The letter relied on by the defendants states:
 "At the request of Mayor Bright, this letter is to advise you that beginning immediately all attorneys who represent the City of Montgomery are to submit bills based on a fee of $90.00 per hour for out of court and in court time.
 "If you have any questions, do not hesitate to contact me."
We do not find that this letter supports an inference that McCollum had any authority to approve Guy's offer. The affidavit testimony submitted by the City in support of its motion for a summary judgment stated that the authority to set these rates rested solely with the mayor and that any deviation from them that had occurred had been at the direction of then Mayor Folmar before he left office. Moreover, the record contains no evidentiary material in opposition to the City's motion for a summary judgment that placed this affidavit testimony in dispute or that supported the proposition that the City had permitted McCollum to exercise this authority on behalf of the mayor. "An agent's apparent authority must be based upon the conduct of the alleged principal and not that of the alleged agent." Wally's Inc. v. Intergraph Corp., 727 So.2d 34,37 (Ala. 1998) (citing Secor Bank v. Bailey, 596 So.2d 900, 901 (Ala. 1992); Gray v. Great American Reserve Ins. Co., 495 So.2d 602, 607 (Ala. 1986); Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 394,281 So.2d 636, 641 (1973)). Thus, we conclude that the trial court correctly determined that McCollum lacked the apparent authority on which the defendants could justifiably rely to bind the City.
However, the defendants also assert that the City ratified McCollum's acceptance of Guy's offer by paying six bills submitted by the firm at the $175 hourly rate. The defendants have failed to cite authority in support of their ratification argument, which violates Rule 28, Ala.R.App.P. Rule 28(a)(5) requires that an appellant's argument "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." In McLemore v. Fleming, 604 So.2d 353,353 (Ala. 1992), this Court observed:
 "In Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App. 1984), the court stated: `Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor [our] function to perform all of the legal research for an appellant.' See Henderson v. Alabama A M University, 483 So.2d 392 (Ala. 1986) (quoting Gibson with approval). *Page 924 
"Furthermore, we cannot, based on undelineated propositions, create legal arguments for the appellant. Spradlin v. City of Birmingham, 601 So.2d 76 (Ala. 1992)."
See also Connerly v. Connerly, 523 So.2d 461 (Ala.Civ.App. 1988) (an appellant's citations to general propositions of law that were not specifically applicable to the issues presented by the appeal does not fulfill the requirements of Rule 28, Ala.R.App.P.)
Although we might therefore dismiss this argument, a short discussion of the merits is appropriate under the circumstances of this case. This Court has stated that "[r]atification by the alleged principal cannot be found where there is no evidence that he or she had any knowledge of the act purportedly ratified." Watson v. Auto-Owners Ins. Co., 599 So.2d 1133,1136 (Ala. 1992) (citing Street v. Sinclair, 71 Ala. 110, 116 (1881);Moman v. Gregerson's Foods, Inc., 570 So.2d 1215, 1216 (Ala. 1990)). Nothing in the record supports the defendants' argument that the City had knowledge of McCollum's purported acceptance of Guy's asserted hourly rate. The affidavit testimony of Jeff Downes, the City's risk manager, stated that as soon as he noticed the City was incurring "significant legal fees" in cases in which the firm was involved, he contacted RSKCO to get copies of the bills being submitted by the firm. He further stated that upon his review of those bills, he found that the firm was charging the $175 hourly rate and after consulting with the new city attorney, he sent a letter to Guy advising him that the firm was not authorized to charge the $175 fee. Thereafter, Downes stated that he began to apply the firm's overcharges to subsequent amounts billed to the City by the firm.
Further, the affidavit testimony of Mike Ilardi, an employee of RSKCO, stated that bills for attorney fees were submitted directly to RSKCO; that he did not review the rates submitted because the rates were set by the mayor; that he was not aware that the firm was charging above the authorized rate established by the mayor; and that once he was contacted by Downes concerning the firm's billing at an unauthorized rate, he was instructed to not pay the firm in excess of the $90 and $120 hourly rates. The defendants submitted to the trial court no evidence to dispute this affidavit testimony. Thus, we conclude that the City did not have knowledge of McCollum's purported acceptance or approval of Guy's hourly rate and therefore did not ratify that rate through RSKCO's payment of the six bills submitted by the firm before Downes became aware that the firm was billing at an unauthorized rate.
The judgment of the trial court is, therefore, due to be affirmed.
AFFIRMED.
See and Stuart, JJ., concur.
Moore, C.J., and Woodall, J., concur in the result.
[1] The City also named J. Bernard Brannan, Jr., as a defendant in its complaint. On January 5, 2001, Brannan filed a motion to dismiss, and filed a renewed motion to dismiss on April 24, 2001. The trial court granted Brannan's motion on May 1, 2001. On May 4, 2001, the City filed a motion asking the trial court to reconsider its order granting Brannan's motion to dismiss. That motion was denied on May 14, 2001.
[2] Attached to the City's cross-motion for a summary judgment were affidavits of Mayor Bobby Bright; Mark Kennedy, outside legal counsel to the mayor; Jeff Downes, the City's risk manager; and Mike Ilardi, an employee of RSKCO Claims Services, Inc., the third-party administrator for the City's self-insured liability program. Also attached to the motion was a letter, dated February 18, 2000, from McCollum, advising the defendants that attorneys representing the City were to submit bills at a rate of $90 per hour; a letter, dated October 6, 2000, from Downes advising the defendants that the $175 hourly rate had not been approved and that the $90 and $120 hourly rates remained in effect; certain responses the defendants had made to the City's interrogatories; and bills submitted by the defendants to RSKCO Claims Services.
[3] The defendants have also attached to their brief certain sections of Act No. 618, Ala. Acts 1973, providing for a mayor-council form of government, which may be adopted by cities having a population between 70,000 and 135,000, in support of their argument that McCollum had the actual authority to agree to the $175 per hour rate. No argument based on these sections is contained in the record. "This Court cannot consider arguments raised for the first time on appeal; rather our review is restricted to the evidence and arguments considered by the trial court."Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992); we, therefore, cannot consider the materials submitted for the first time in the defendants' brief to this Court.