252 So.2d 307

**John W. COCHRAN and Lillie Cochran**

v.

**Paul KEETON and Charles Thompson, Individually and d/b/a Keeton and Thompson.**

**8 Div. 30.**

Court of Civil Appeals of Alabama.

Nov. 25, 1970.

Rehearing Denied Dec. 23, 1970.

Tompkins & Tompkins, Tuscumbia, for appellees.

Perkins, Walker & Musgrove, Florence, for appellants.

WRIGHT, Judge.

Appellants, plaintiffs below, purchased a newly constructed home in Colbert County, Alabama, from appellees. Some five months after purchase and transfer of title, the house was substantially damaged by fire.

Appellants brought suit against appellees in tort and implied warranty. The first two counts of the amended complaint, after setting out the relationship of builder-vendor and vendee in the sale of a new

house, alleged negligence in the construction and wiring of the house, which negligence proximately resulted in the fire and accompanying damage. The last two counts alleged negligent repairs were made to the house after purchase, which caused the fire and damages.

The effect of Count 1A is to charge breach of an implied warranty in the construction and sale of the house, said count also alleging the creation of an imminently dangerous instrumentality, due to faulty and defective wiring of the house while being constructed. Count 1A, is as follows:

### "COUNT Ia

"The Plaintiffs claim of the defendants the sum of Ten Thousand and no/100 ($10,000.00) Dollars as damages for that: at all times mentioned hereinafter the Defendants were, in Colbert County, Alabama, engaged, for a reward, in the business of building, constructing and selling houses; and during the fall of 1963, in the prosecution of their said business, built and constructed a house on a lot of land on Virginia Street in or near the Town of Cherokee, Alabama. After said house was built and constructed it was sold to the Plaintiffs and the Plaintiffs were given possession thereof in the month of December, 1963.

"The Plaintiffs aver that when the defendants constructed said house it was defectively, faultily and improperly wired for electricity and in said condition was imminently dangerous. The Plaintiffs aver that the Defendants knew, or in the exercise of reasonable care, should have known that said house was defectively, faultily or improperly wired for electricity and was imminently dangerous and was likely to cause injury or damage. The Plaintiffs further aver that the Defendants owed a duty to the Plaintiffs to construct said house so that said house was properly wired for electricity and that; the Defendants negligently breached said duty in that they faultily,

improperly or defectively wired said house for electricity. As a proximate result of the breach of said duty, fire broke out in the said house on, to-wit, the 12th day of May 1964, and burned, damaged or otherwise depreciated the value of said house and the contents therein, the property of the Plaintiffs; all to the damage of the Plaintiffs as aforesaid, hence this suit."

Demurrer was sustained to the first three amended counts of the complaint and was overruled as to amended Count 4A.

Count 4A charged negligence to appellees in that after purchase and occupancy of the house, appellants complained to appellees that there had been a fire in the electrical wiring, and after such complaint, appellees undertook to check and repair the wiring; that such checking and repairing were negligently done and that this negligence proximately caused a second fire from which the damages claimed resulted. This is a charge of negligence in the performance of a gratuitous promise, assuming there was no duty to repair by appellees.

Upon trial, the evidence was that there had been a small electrical fire in the wiring leading to the hot water heater. Appellants extinguished this fire with little damage. After it was extinguished, examination disclosed some of the insulation of the wire was damaged or torn when a nail had been bent over it.

Upon complaint to appellees, an electrician was sent by them to inspect the wiring at the scene of the fire. He noted the damaged wire and checked the junction and fuse box. He testified he made no repairs but recommended the fuse be pulled on that circuit.

For several days, subsequent to the first fire, appellants noticed an odor as of something burning in the house, and the presence of some smoke. They complained again to appellees and requested the wiring be checked. Appellees sent another electrician who inspected and found various

wiring defects. He made no repairs but notified appellees of his findings. According to his testimony, appellees directed him to correct the defects in the whole system. Before he made any repairs, a fire broke out in the kitchen wall and serious damage was done to the house.

There was evidence tending to show that the cause of the fire was various defects in the electrical wiring, such as broken insulation, overloaded circuits and junction box improperly installed. There was further evidence that there had been recent lightning storms which might have caused a short and started a smoldering fire.

At the conclusion of the evidence, after a discussion out of the presence of the jury, and without inclusion in the record, the court gave to the jury an oral affirmative charge for appellees. Verdict and judgment was returned for appellees.

Appellants on appeal charge error in the sustaining of demurrer to amended Counts 1A, 2A and 3A, and in the giving of the affirmative charge for appellees. There was no motion for a new trial.

The essence of appellants' argument in brief, is that since the first two counts of the amended complaint to which demurrer was sustained, stated a cause of action on an implied contract, the sustaining of demurrer was error. Such argument is dependent upon the recognition by the courts of this State of a liability, or an implied contract, upon the builder-vendor for defects in a newly constructed house after transfer of title by deed to the vendee. Appellants' argument would not only require recognition of such theory of liability, but the repudiation of the strict application of the common law rule of caveat emptor in the sale of real estate.

It is appellees' contention, and was the apparent conclusion of the trial court, in sustaining demurrer to appellants amended Counts 1A and 2A, that the decision of the Supreme Court of Alabama in Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884, precludes recovery in an action on an implied warranty or for negligent construction creating an imminently dangerous condition against a builder-vendor of a newly constructed home by the purchaser. Such contention requires that we examine Druid Homes, Inc. v. Cooper, supra.

The decision in *Druid Homes* was rendered by the Supreme Court in 1961. It was stated therein that it was a case of first impression in Alabama, and that "No decision has come to our attention which permitted recovery by the vendee of a house upon the theory of implied warranty.

"Most of the cases on this point cite Williston on Contracts, Vol. 4, § 926 (Rev. Ed.), which states:

'The doctrine of caveat emptor so far as the title of personal property is concerned is very nearly abolished, but in the law of real estate it is still in full force. One who contracts to buy real estate may, indeed, refuse to complete the transaction if the vendor's title is bad, but one who accepts a deed generally has no remedy for defect of title except such as the covenants in his deed may give him. Therefore, if there are no covenants, he has no redress though he gets no title * * * Still more clearly there can be no warranty of quality of condition implied in the sale of real estate and ordinarily there cannot be in the lease of it.

'It is generally true also that any express agreements in regard to land contained in a contract to sell it are merged in the deed if the purchaser accepts a conveyance. If indeed, the vendor has made misrepresentations, even innocently, rescission is possible in most jurisdictions, but no remedy is generally available for any breach by the vendor of any promise contained in the contract but omitted in the deed.' "

After the above quotation, the Court cited and quoted from a Washington and an

Oregon case. It concluded its discussion of the point with the following:

> . " * * * We feel that the rule of the cases cited above is sound, makes for certainty in the field of real estate law, and should prevail in this jurisdiction. Purchasers may protect themselves by express agreement embodied in their deeds, and vendors may be certain of their position as to liability for the condition of premises they have sold."

In our consideration of the decision in *Druid Homes* we would observe that the appellees therein apparently did not provide the court with cases then outstanding which did recognize implied warranties in the sale of houses while under construction, though delivery of a deed was after completion. Implied warranty in such instances was recognized in England as early as 1931. Miller v. Cannon Hill Estates, 2 KB 113 (1931); Perry v. Sharon Development Co., 4 All Eng. Rep. 390 (1937); Jennings v. Travener, 2 All Eng. 769 (Q.F. 1955). Cases similar in this country were: Vanderschrier v. Aaron, 103 Ohio App. 340, 140 N.E.2d 819 (Ohio 1957); Hoye v. Century Builders, 52 Wash.2d 830, 329 P.2d 474 (Wash.1958); Minemount Realty Co. v. Ballentine, 111 N.J.Eq. 398, 162 A. 594 (N.J.1932).

Since Williston on Contracts was apparently quoted with favor and reliance, we observe that Williston has now changed on this point, and discusses the varying viewpoints with case citations in Williston on Contracts, Vol. 7, Section 926, Third Edition, 1963. After discussing the new trend in decisions, Williston concluded:

> "It would be much better if this enlightened approach were generally adopted with respect to the sale of new houses for it would tend to discourage much of the sloppy work and jerry building that has become perceptible over the years."

Our research has disclosed that since the decision in *Druid Homes,* and even since publication of Williston on Contracts,

Third Edition, quoted from above, the trend in other jurisdictions toward the "enlightened approach" has increased heavily, and many states have changed their case law on this point—in fact, the State of Washington, from which authority was quoted in *Druid* (Dennison v. Harden, 29 Wash.2d 243, 186 P.2d 908, 912) has repudiated the doctrine of caveat emptor in the sale of new homes. In House v. Thornton, 76 Wash.2d 428, 457 P.2d 199 (1969), the Washington court stated:

> "The old rule of caveat emptor has little relevance to the sale of a brand-new house by a vendor-builder to a first buyer for purpose of occupancy.

> "We apprehend it to be the rule that when a vendor-builder sells a new house to its first intended occupant he impliedly warrants that the foundations supporting it are firm and secure and that the house is structurally safe for the buyer's intended purpose of living in it."

The Washington decision discussed its departure from the strict caveat emptor doctrine by pointing out prior decisions which had begun the trend.

In the case of Hoye v. Century Builders, 52 Wash.2d 830, 329 P.2d 474 (1958), the Washington Supreme Court recognized implied warranties as applicable to contracts for houses to be built and subsequently conveyed. In Fain v. Nelson, 57 Wash.2d 217, 356 P.2d 302 (1960), there was allowed recovery on implied warranty in a sale of a house while being constructed. The decision of House v. Thornton, supra, was but a logical extension of implied warranty to the sale of a newly constructed house.

Since the *Druid* decision, Alabama has begun the trend by the decision of the Supreme Court in the case of Carter v. West, 280 Ala. 603, 196 So.2d 718. In that case the theory of merger of a prior express contract for the construction of a house in the deed of conveyance of the land, as was apparently included in *Druid,* was not applied. The Court distinguished its ruling

from *Druid* on the facts, and stated that *Druid* was not intended to indicate there was no cause of action for the breach of an express agreement to build in a workmanlike manner.

Our research indicates the present weight of authority in this country and England is either to evade or restrict the application of caveat emptor to the sale of a new house, either during construction or after completion, by a builder-vendor. The method most prevalent appears to be that of an implied warranty of habitability or fitness for the use for which purchased.

The other methods of affording relief to the purchaser may be generally classified as (a) strict liability (b) general negligence (c) application of the theory of MacPherson v. Buick Motor Company, infra—dangerous condition, either inherent or imminently so; (d) negligence in creation of latent defects (e) failure to disclose latent defects (f) fraud, mis-representation and deceit. Alabama has allowed relief, on both deceit and mis-representation as grounds for rescission of a sale and for recovery of damages—Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909 (1954); Cloud v. Veeder, 41 Ala.App. 558, 140 So.2d 292 (1962); (g) express warranty, Carter v. West, supra.

The most comprehensive study of vendors' liability for the sale of a defective new home is found in 25 A.L.R.3d 383, and is replete with citations from most jurisdictions.

The rule of caveat emptor arose in the Middle Ages and was premised upon the principle that all traders came to the market place on an equal footing. It is commonly called the rule of horse traders. The premise that commercial transactions are between parties with equal bargaining power and resources has long ago fallen by the wayside. The law has responded to the demands for greater protection of the consumer or purchaser, and the placing of greater responsibility upon the manufacturer and seller of personal property, by adoption of manufacturers' strict liability on creation of dangerous instrumentalities (MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050), and implied warranties of merchantability and fitness of purpose.

This State long ago adopted the law of manufacturers liability and has codified the law of implied warranty in the sale of goods by adopting the Uniform Commercial Code (Title 7A, Article 2—1967). It is totally incongruous that the purchaser of an automobile, a refrigerator or almost any other item of personal property is protected from negligent manufacture or unfitness of use, but the purchaser of a new home should be at the mercy of an unscrupulous builder and seller.

The purchase of a new home is usually the largest single purchase of a lifetime, and a lifetime is required to pay for it. Particularly today, a seller's market prevails and the purchaser is in no position to force inclusion of express warranties in a deed. There are myriad possibilities of hidden and latent defects in the construction of a home, and most purchasers are not capable by training or experience to detect or recognize them. This is an era of mass production of houses, just as it is of consumer goods. The courts gave birth to the rule of caveat emptor. The courts must now give relief from it. Manufacturers' liability and implied warranty in the sale of personal property were first recognized in the courts, and legislative action followed.

After our study and consideration, and in view of the modern trend and authority, we are led to the conclusion that if the question here to be decided were presented to the Supreme Court of Alabama, the decision in *Druid* would be overruled, insofar as it adopts the rule of caveat emptor in the sale by a builder-vendor of a newly constructed home, and that the principle of an implied warranty of fitness and habitability for the purpose purchased would be recognized.

With that belief in mind, we now proceed to hold that Count 1A of appellants' amended complaint, though containing unnecessary surplusage, states a cause of action on an implied warranty, and that the sustaining of demurrer thereto by the lower court was error to reversal.

In view of the above ruling, we see no need to discuss the sustaining of demurrer to Counts 2A and 3A. Count 2A is based upon the same theory of action as 1A, and 3A the same as Count 4, to which demurrer was overruled.

We come now to discuss the action of the trial court in giving the affirmative charge as to Count 4.

Count 4 charged negligence in the checking and repair of wiring in the house after notice to the vendor of apparent dangerous defects. This cause of action is based upon a negligent performance of a gratuitous undertaking.

The evidence was without dispute that after the notice of a defective condition in the wiring and a previous electrical fire, appellees sent two different men to inspect and determine if there were defects. The testimony of these men was that they did check and did find certain defects in the wiring of the house as it was constructed. They reported these defects to appellees and one of them was directed by appellees to repair and correct the defects. He informed appellee Keeton he could not begin repairs for two days. The fire complained of occurred before the repairs were undertaken.

We are inclined toward the proposition that there was a duty upon appellees to repair the defective wiring if negligently installed by them, upon notice that there existed an imminently dangerous condition, created by them. Restatement of Torts, Section 321. It appears there should be a duty to act to avert the consequence of an originally negligent act upon notice thereof. However, we are not so holding in this instance.

There is no indication from the record whether the affirmative charge was given for appellees, because the evidence was insufficient to show a duty to repair the wiring by appellees, or if a duty were shown, the evidence was deemed insufficient to show a breach of such duty, or if there were a breach, that such breach was the proximate cause of appellants' damages.

In the absence of indication in the record, we must examine the record, and if the action of the trial judge is supported therein on either of the necessary elements of proof, we are required to sustain the court on appeal.

Appellees approach the court's action in giving the affirmative charge as to Count 4 as if the duty involved between the parties arose out of a gratuitous promise to repair. They contend that if there were such a promise the evidence showed nonfeasance rather than mis-feasance, and that no cause of action arises from non-feasance of a gratuitous promise.

We agree that such is the law, however, we answer this contention by stating that there was evidence from which the jury could determine that the promise was undertaken and thus a failure to act reasonably to repair was misfeasance, and if such proximately caused appellants' damages, there was a right of recovery.

The evidence we refer to has been previously mentioned, and is that appellees, or one of them, sent electricians to inspect and recommend action needed. In response to the report of the inspection and recommendations, appellees directed that certain repairs be made. Action undertaken, though delayed or performance uncompleted, could constitute negligence, depending upon the necessity, real or apparent, of immediate performance. Restatement of Torts, 2d Sec. 323, Melbourne Troy v. Louisville & N. R. Co., 88 Ala. 443, 6 So. 762; Sunflower Compress Co. v. Clark, 165 Miss. 220, 145 So. 617.

We further believe the evidence as to proximate cause was sufficient to be presented to the jury. There is no need for us to cite authority here as to the broadness of the scintilla rule.

This Court has respectfully reached its decision in this matter after careful consideration, with the sole end in mind to serve the cause of justice, and with the sincere belief that the Supreme Court, if presented with the opportunity to review the decision of Druid Homes, Inc. v. Cooper, *supra*, in the light of recent authority, would agree with our decision. We know of no other means to present the matter for its consideration.

We therefore hold that this case be reversed and remanded for the reasons stated hereinabove.

Reversed and remanded.