Wally's, Inc., d/b/a Ramada Inn at Huntsville-Madison Airport, filed an action against Intergraph Corporation, alleging breach of contract, fraud, misrepresentation, suppression, and deceit. The complaint was amended to include as a plaintiff Wallace Coile, the president of Wally's, and to add as defendants Executive Park Hotels, Ltd.("E.P.H."), M.C. Matsos, and Herman E. Thomason. Matsos and Thomason are the co-owners of E.P.H. The court entered a summary judgment for Intergraph on the fraud, misrepresentation, suppression, and deceit claims and made that judgment final pursuant to Rule 54 (b), Ala. R. Civ. P. Wally's, Inc., and Wallace Coile appealed.
 Motion to Dismiss the Appeal
Intergraph has moved to dismiss the appeal, contending that Wally's is a bankrupt debtor and lacks standing to appeal. Intergraph asserts that because Wally's is bankrupt, its appointed trustee in bankruptcy is the real party in interest for this appeal. Accordingly, Intergraph asserts that this appeal should be dismissed based on the failure of the trustee of the bankruptcy estate to file a timely appellant's brief as required by Rule 31 (a), Ala. R. App. P.
Intergraph cites authorities for the proposition that, upon the appointment of a trustee in bankruptcy, the debtor's property, including choses in action, becomes the property of the bankruptcy estate, and the proposition that decisions as to the administration of the estate's property rest solely in the discretion of the trustee. 5 Collier on Bankruptcy, ¶¶ 541.04, 541.08 (Matthew Bender, 15th ed., rev. 1996) (citing 11 U.S.C. § 541
(a) (1)); 3 Collier on Bankruptcy, ¶ 323.03[1] (15th ed., rev. 1997) (citing Bauer v. Commerce Union Bank, 859 F.2d 438,441 (6th Cir. 1988)); Harris v. St. Louis Univ., 114 B.R. 647
(Bankr .E. D. Mo. 1990). Intergraph argues that the trustee is expressly authorized to sue, to be sued, and to continue or discontinue the prosecution of any pending civil actions. 3Collier on Bankruptcy ¶ 323.03; Miller v. Shallowford CommunityHosp., Inc., 767 F.2d 1556, 1559 (11th Cir. 1985); Jones v.Harrell, 858 F.2d 667, 669 (11th Cir. 1988).
Intergraph's argument is not well taken. When it filed its notice of appeal, Wally's was involved in a Chapter 11 bankruptcy proceeding. In a Chapter 11 proceeding, the debtor in possession has the same rights, powers, and duties as the trustee of the bankruptcy estate. 11 U.S.C. § 1107 (a) (1993). Accordingly, on January 26, 1998, the notice of appeal was properly filed by Wally's, the debtor in possession. On February 25, 1998, the Chapter 11 bankruptcy case was converted to a Chapter 7 proceeding and the debtor in possession was replaced by the Chapter 7 trustee. However, the motion to dismiss the appeal was not filed until after the Chapter 7 bankruptcy case had been closed and the trustee had been discharged. Therefore, under 11 U.S.C. § 654 (c), the action on appeal was abandoned to the debtor, and thus Wally's and Coile are the proper parties to pursue this appeal. Intergraph's motion to dismiss the appeal is denied.
 Merits
The complaint filed by Wally's, as amended, alleged that Intergraph Corporation, through its agents Tom Burridge and Herman Thomason, committed fraud, misrepresentation, suppression, and deceit in securing the execution of a contract by which Intergraph agreed to rent rooms from Wally's ("the contract").[1] See §§ 6-5-100 to 6-5-104, Ala. Code 1975. This appeal presents two issues: (1) Whether the plaintiffs presented substantial evidence indicating that Thomason was an agent for Intergraph, acting within the line and scope of his employment, while he was negotiating the contract *Page 36 
between Intergraph and Wally's, and (2) whether the plaintiffs presented substantial evidence indicating that Intergraph committed fraud, misrepresentation, suppression, or deceit.
Specifically, Wally's alleged that Intergraph fraudulently, without Wally's knowledge, began doing business with another hotel, in violation of the exclusive agreement with Wally's to rent rooms in the Ramada Inn. It further alleged that Intergraph defrauded Wally's by willfully failing to disclose in its dealings with Wally's that it had added to the contract an "Exhibit. A" that Wally's says was added to provide Intergraph a means to get out of its contractual obligation. Wally's alleged that Intergraph knew that Wally's had subleased[2] the Ramada Inn contingent upon its obtaining the exclusive one-year contract with Intergraph. Wally's alleged that Intergraph, through Tom Burridge and Herman Thomason, who Wally's says were Intergraph's agents, committed fraud by unilaterally adding the phrase "See Exhibit A"[3] to the signed contract, without any discussion or agreement regarding Exhibit A. Accordingly, Wally's alleged that when Intergraph entered into the exclusive one-year contract Intergraph had no intention of honoring it. Wally's also alleged that Burridge and Thomason conspired to defraud it by allowing Wally's to rely upon the exclusive contract when it decided to sublease the Ramada Inn.
Thomason is an engineer who began working for Intergraph in the mid-1980's. He retired from Intergraph in 1995 and performed consulting work for Intergraph until February 1997. Thomason is the general partner for E.P.H., which had built the Ramada Inn hotel in Madison. Thomason was involved with the hotel's operations until Wally's subleased the hotel on December 8, 1995. Thomason negotiated on behalf of E.P.H. for the sublease of the Ramada Inn to Wally's. Coile, as president of Wally's, negotiated only with Thomason regarding the sublease of the Ramada Inn. While Thomason was negotiating the sublease of the Ramada Inn, he was also attempting to renew a contract on behalf of the Ramada Inn to rent rooms to Intergraph. Thomas Burridge, the executive director of business development for Intergraph, negotiated on behalf of Intergraph to renew the contract with the Ramada Inn.
After Wally's subleased the Ramada Inn, Wally's wanted the renewal of the contract between Intergraph and Ramada Inn signed, in order to receive the advance on the contract, to enable Wally's to pay E.P.H. for the sublease (see note 2). Thomason and Coile testified by deposition that Thomason negotiated and drafted the contract with Intergraph on behalf of the Ramada Inn. However, Coile also testified that he thought Thomason was working for Intergraph during the negotiation of the contract. Thomason gave the contract to Coile, and after Coile signed it Thomason took it to Burridge, who signed it and added "See Exhibit A." Thomason testified that when he asked Burridge about the addition of Exhibit A, Burridge explained that Exhibit A would settle any future contingencies. Neither Thomason or Burridge disclosed to Coile the addition of Exhibit A.
After pressure from Intergraph's upper management to provide more than one hotel choice, Burridge entered into a contract on March 28, 1996, to rent a minimum of 250 room-nights per month from a Howard Johnson's hotel. Intergraph notified Wally's that it would rent only 250 room-nights per month from the Ramada Inn, rather than 500 roomnights. Wally's refused to agree to the reduction. As a result, Intergraph, relying upon Exhibit A, which made the contract reviewable quarterly, cancelled the contract three and one-half months after it had been signed.
Wally's contends that Intergraph's unilateral addition of Exhibit A, without disclosure to or discussion with Wally's, is substantial evidence of fraud. Further, Wally's contends that Intergraph wrongfully used Exhibit A to *Page 37 
stop payment on the contract, while at the same time signing an agreement with Ramada Inn's competitor. The circuit court entered a summary judgment for Intergraph on the claims alleging fraud, misrepresentation, suppression, and deceit; the breach-of-contract claim remains pending.
On review of a summary judgment, our standard of review ifi the same as the standard the trial court applied when it considered the summary judgment motion:
 "[W]e must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant."
Olympia Produce Co. v. Associates Fin. Servs., 584 So.2d 477, 480
(Ala. 1991).
The first issue is whether there was substantial evidence that Thomason was acting as an agent for Intergraph. There is no evidence that Thomason was acting with actual authority from Intergraph. Thomason had previously been an Intergraph employee, but there was substantial evidence indicating that at the time of the contract negotiations he was an independent contractor for Intergraph. There was no evidence indicating that Thomasons's duties included negotiating contracts such as the one involved in this case. Therefore, the evidence would not support a finding that, in regard to this contract, Thomason was acting within the line and scope of his duties at Intergraph. In Hendley v.Springhill Memorial Hosp., 575 So.2d 547, 549 (Ala. 1990), this Court adopted the reasoning of the Court of Appeals of the District of Columbia, as follows:
 "`The act of a servant done to effect some independent purpose of his own and not with reference to the service to which he is employed, or while he is acting as his own master for the liable being is not within the scope of his employment so as to render the master liable therefor. . . . The general idea is that the employee at the time of doing the wrongful act, in order to fix the liability on the employer, must have been acting in behalf of the latter and not his own account.'"
Quoting Grimes v. B.F. Saul Co., 60 App. D.C. 47, 47 F.2d 409
(1931).
In these negotiations, Thomason continued to act in his own behalf, based on his financial interest in the Ramada Inn. There is no evidence indicating that Intergraph authorized Thomason to negotiate on behalf of Intergraph after Wally's had subleased the Ramada Inn. On the contrary, Burridge conducted the negotiations on behalf of Intergraph, and the evidence would support only a finding that Thomason negotiated on behalf of the Ramada Inn and, therefore, on behalf of Wally's.
Wally's contends that Intergraph is liable for fraud, based upon Thomason's apparent authority to act for Intergraph. Wally's alleges that its agent, Coile, knew that Thomason worked at Intergraph and that Coile knew Burridge was Thomason's supervisor. Wally's contends that there was no way for Coile to know that Thomason was acting outside the line and scope of his authority or that Thomason was an independent contractor for Intergraph. Wally's relies on the following statement fromAlabama Pattern Jury Instructions: Civil, no. 3.04 (1974):
 "Apparent authority, for which a principal is responsible to a third party for the act of his agent, is that authority which arises when the principal, by his acts, words, or conduct, reasonably interpreted, causes such third party to believe that authority had been given to an agent to act in his behalf and such authority cannot be established solely by the acts of the agent."
See Merrell v. Joe Bullard Oldsmobile, Inc., 529 So.2d 943, 947
(Ala. 1988).
Wally's presented no substantial evidence to support a finding that Thomason had apparent authority to act as Intergraph's agent. Even if Thomason held himself out to be an agent of Intergraph and Coile relied on Thomason's promise regarding the exclusive contract, such representations by Thomason could not create apparent authority. An agent's apparent authority must be based upon the conduct of the alleged principal and not that of the alleged agent. Secor Bank v. *Page 38 Bailey, 596 So.2d 900, 901 (Ala. 1992); Gray v. Great AmericanReserve Ins. Co., 495 So.2d 602, 607 (Ala. 1986); Johnson v.Shenandoah Life Ins. Co., 291 Ala. 389, 394, 281 So.2d 636, 641
(1973). Wally's did not produce substantial evidence indicating that Intergraph created apparent authority in Thomason to act as Intergraph's agent.
With respect to the second issue, because there was no evidence indicating that Thomason was acting as an agent for Intergraph, there was also no evidence indicating that Intergraph committed fraud by wrongfully adding Exhibit A. A jury could not find that Intergraph fraudulently suppressed the addition of Exhibit A, because the evidence could support only a conclusion that, in these negotiations, Thomason was acting as a representative of the Ramada Inn and therefore of Wally's. Thomason was aware of the addition at the time it was made. The judgment is affirmed.
MOTION TO DISMISS DENIED; AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, SEE, and LYONS, JJ., concur.
[1] The contract provided: "The Ramada Inn agrees to lease and Intergraph agrees to exclusively lease from Ramada. A minimum of 30 rooms are to be available on any given night. The term of the contract is for twelve months and Intergraph will prepay $16,473 per month beginning January 1, 1996 (prepayment is for 500 room-nights per month)."
[2] The City of Huntsville had leased the Ramada Inn property to E.P.H.; E.P.H. had subleased the property to Wally's.
[3] The wording of Exhibit A purported to make the contract reviewable quarterly, to require refurbishing of the common areas. and to provide a credit for rooms not used.