[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 142 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 143 
Cornelius McGinnis and his wife Teresa McGinnis appeal from summary judgments in favor of Jim Walter Homes, Inc. ("Jim Walter"), Holsombeck Electric Company, Inc. ("Holsombeck"), and Alabama Power Company ("Alabama Power").
In 1990 the McGinnises entered into a contract with Jim Walter for Jim Walter to construct a substantially complete residence for them in or near Harpersville. Jim Walter contracted with Holsombeck for Holsombeck to install the electrical system in the McGinnis home. Jim Walter released the substantially completed residence to the McGinnises before July 18, 1991; that was the approximate date on which Alabama Power began supplying electricity to the McGinnis home.
Shortly after the McGinnises moved into their home in 1991, they began experiencing problems with the electrical system (light bulbs would blink and burn out; the electric heat pump/air conditioning unit would not cool; etc.). The McGinnises testified that they telephoned Jim Walter to complain about the electrical problems and that on two occasions Jim Walter sent someone to the McGinnis home to check out these problems. The McGinnises testified that they did not notify either Holsombeck or Alabama Power about these electrical problems.
At approximately 11:00 a.m. on April 12, 1996, a fire partially destroyed the McGinnis home, and the McGinnises' two-year-old daughter Takresha died as a result of the fire. The fire substantially destroyed the front middle bedroom and portions of the house immediately overhead in the attic. Takresha died of smoke inhalation.
On April 10, 1998, the McGinnises sued Jim Walter, Holsombeck, and Alabama Power. In one count, they alleged that the three defendants had negligently caused the fire that led to their daughter's death. In another count, they alleged that Alabama Power had caused the fire and the death by negligent or wanton construction, inspection, or repair in regard to the house.[1]
Jim Walter, Holsombeck, and Alabama Power each moved for a summary judgment, and the court entered a summary judgment for of each defendant. This appeal followed.
The State fire marshal's investigation concluded that the fire originated in the front middle bedroom and that the most *Page 144 
probable cause of the fire was "children playing with matches." The McGinnises contend that the fire originated in the attic of the house above the front middle bedroom and was caused by a failure in the electrical wiring system and that actions and/or inactions on the part of each defendant contributed to cause the fire.
 I. The Claims Against Alabama Power
The following facts are undisputed: Alabama Power did not construct, inspect, or make repairs to the McGinnis home; Alabama Power had no duty to construct, inspect, or make repairs to the McGinnis home; Alabama Power was never made aware of any electrical problems in the McGinnis home; and Alabama Power's only action regarding the home was to connect electrical power to it in 1991.
In Chambers v. Buettner, 295 Ala. 8, 11, 321 So.2d 650, 652 (1975), this Court stated:
 "The duty of a supplier of electricity to premises wholly owned and controlled by the recipient of service is well settled. A supplier who merely furnishes electricity is not responsible for defects in the system to which electricity is supplied. It is under no duty to inspect the system to which electricity is supplied. The duty of the supplier ends when the connection is properly made, when the supplier has no control over the premises, and the supplier is without actual knowledge of any defective or dangerous condition."
Thus, we see no basis for liability on the part of Alabama Power for negligent or wanton construction, inspection, or repair.
The McGinnises also claim Alabama Power should be held liable for the fire and death because, they say, Alabama Power violated a Shelby County building ordinance[2] when it connected electric-utility service to the McGinnis house in 1991; at that time a final inspection of the electrical system had not been conducted by the Shelby County building inspectors.[3] The McGinnises say that this action on the part of Alabama Power constituted negligence.
Houses built in the Harpersville city limits are not subject to the Shelby County building ordinance. Alabama Power argues that it was unaware that the McGinnis house was subject to the ordinance. Alabama Power maintains that it relies upon its customers to tell it where their residences are located and that all information provided to Alabama Power concerning this residence stated that it was in Harpersville. Cornelius McGinnis filed an affidavit stating that this house was located outside the Harpersville city limits, but the affidavit does not state that the McGinnises made Alabama Power aware of this fact. *Page 145 
Alabama Power also argues that the McGinnises failed to produce substantial evidence indicating that Alabama Power's act of connecting electrical power to the McGinnis home in 1991 was a proximate cause of the fire and the resulting death of their daughter in 1996. "Evidence supporting nothing more than speculation, conjecture, or a guess does not rise to the level of substantial evidence." Brushwitz v. Ezell,757 So.2d 423, 432 (Ala. 2000). Alabama Power points out that the McGinnises are supporting their claim by applying an inference upon an inference — (1) that defectively or improperly installed wiring caused the fire, (2) that this defective condition was discoverable, (3) that the discoverable defect would, in fact, have been discovered by the Shelby County building inspectors,[4] and (4) that the Shelby County building inspectors would have required that the defect be corrected before they approved the home for electrical service. We agree that the McGinnises failed to produce substantial evidence indicating that Alabama Power's act of connecting power to the McGinnis home in 1991 was a proximate cause of the fire and resulting death of their daughter in 1996. Brushwitz, 757 So.2d at 432. The trial court correctly entered the summary judgment in favor of Alabama Power. That summary judgment is affirmed.
 II. The Claims Against Jim Walter
The trial court entered a summary judgment for Jim Walter on July 10, 2000. On our review of that summary judgment, we are limited to considering the evidence that was before the trial court when it granted Jim Walter's motion for summary judgment. Turner v. Systems Fuel, Inc.,475 So.2d 539, 541-42 (Ala. 1985).[5] We review that evidence to determine whether it created a genuine issue of material fact, and, if it does not, whether the movant, Jim Walter, was entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. Jim Walter, as the moving party, had the burden of establishing that there was no genuine issue of material fact. Lott v. Tarver, 741 So.2d 394, 396 (Ala. 1999). In conducting this review, we consider all of the relevant undisputed evidence and we view relevant disputed evidence in a light most favorable to the nonmovants, the McGinnises; and we resolve all reasonable doubts against the movant, Jim Walter. Wally's, Inc. v. Intergraph Corp.,727 So.2d 34, 37 (Ala. 1998).
In their brief, the McGinnises rely on Article 13A, Title 6, Ala. Code 1975, §§ 6-5-220 to 6-5-228, "Actions Against Architects, Contractors, Engineers." They contend that they contracted with Jim Walter to build their home and therefore that Jim Walter is liable under these statutes for the damage to their home and the death of their daughter, both of which resulted from a fire caused by the defective condition of the electrical wiring installed in their home during construction. We cannot, however, consider arguments *Page 146 
raised for the first time on appeal. Andrews v. Merritt Oil Co.,612 So.2d 409, 410 (Ala. 1992). Therefore, we cannot consider whether Jim Walter could be liable for Takresha's death under Ala. Code 1975, §§ 6-5-220 to 6-5-228, because this argument was not presented to the trial court.[6]
In their response in opposition to Jim Walter's summary-judgment motion, the McGinnises argued that Jim Walter (1) was vicariously liable for the acts of omissions of Holsombeck, who they say acted as Jim Walter's agent, servant, or employee; (2) was directly liable, based upon what the McGinnises say was a voluntary undertaking to inspect and repair their home (see Cochran v. Keeton, 47 Ala. App. 194, 252 So.2d 307
(Ala.Civ.App. 1970)); and (3) was directly liable because Holsombeck was not competent to install the electrical system in the McGinnis house.
A general contractor is not liable for the alleged negligence of an independent contractor. Knight v. Burns, Kirkley Williams Constr. Co.,331 So.2d 651, 655 (Ala. 1976). Whether a relationship is one involving an independent contractor or is a master-servant relationship depends on whether the entity for which the work is being performed has reserved the right of control over the means by which the work is done. Pugh v. ButlerTel. Co., 512 So.2d 1317 (Ala. 1987). In the absence of a nondelegable duty, the mere retention of the right to supervise or inspect the work of one who would otherwise be an independent contractor, as the work progresses to ensure compliance with the terms of an agreement, does not operate to create a master-servant relationship. Pugh, 512 So.2d 1317. One must retain control over the manner in which the work is done in order to create a master-servant relationship. Pugh, 512 So.2d 1317.
The McGinnises contend that two statements contained in the plans and specifications for the McGinnis house evidence what they describe as the high degree of control they say Jim Walter retained over the details of the work performed on the house:
 "In instances where brand names and/or standards are specified, the builder reserves the right to substitute equivalent quality."
 "Additionally, Jim Walter Homes, Inc., hereby reserves the right to substitute materials of equivalent quality and/or techniques of assembly and/or construction methods from that contained in these plans where necessary to accommodate differences in local codes, geographic customs, option selection and availability of materials."
We do not agree. These statements do not demonstrate that Jim Walter retained control over the means by which Holsombeck performed its work — only that Jim Walter retained the right to make changes in the house plans. We conclude that the McGinnises failed to present evidence indicating the existence of a master-servant relationship between Jim Walter and Holsombeck. Thus, Jim Walter cannot be liable for the alleged acts and omissions of Holsombeck, an independent contractor. Knight,331 So.2d 651. The summary judgment for Jim Walter is affirmed as to the claim that it was vicariously liable for Holsombeck's actions.
The McGinnises allege that they repeatedly complained to Jim Walter *Page 147 
about the electrical problems and that on two occasions Jim Walter dispatched a representative (one, they say, was identified as the "head electrician for Jim Walter") to check out the electrical problems, but that the problems were persistent and were never repaired. The McGinnises rely upon Cochran v. Keeton, 47 Ala. App. 194, 252 So.2d 307, to support their contention that Jim Walter should be held directly liable based upon a voluntary undertaking to inspect and repair their home. InCochran, the plaintiffs' newly purchased home had a defective condition in the electrical wiring; the defective wiring caused an electrical fire. The builder/seller had sent two electricians out to check for wiring defects. The electricians found various wiring defects and reported their findings to the builder/seller. Thereafter, the builder/seller directed the electricians to correct the defects, but a fire occurred before the repair work could begin. In Cochran,47 Ala. App. at 200, 252 So.2d at 313, the Court of Civil Appeals stated:
 "[T]here was evidence from which the jury could determine that the promise was undertaken and thus a failure to act reasonably to repair was misfeasance, and if such proximately caused [the Cochrans'] damages, there was a right of recovery.
 "The evidence we refer to has been previously mentioned, and is that [the builder/seller] sent electricians to inspect and recommend action needed. In response to the report of the inspection and recommendations, [the builder/seller] directed that certain repairs be made. Action undertaken, though delayed or performance uncompleted, could constitute negligence, depending upon the necessity, real or apparent, of immediate performance."
Jim Walter contends that in Cochran the cornerstone of the court's holding was that the builder/seller had acknowledged the electrical defects and had agreed to repair them, but had failed to act, and its failure to act resulted in a fire. Jim Walter argues that no evidence before the trial court indicated that it either acknowledged any electrical defects or promised to repair any alleged defects; thus, Jim Walter argues, the McGinnises' reliance on Cochran is misplaced. We do not agree that Jim Walter would have to acknowledge some defect and agree to repair that defect before it could be held liable based upon a voluntary undertaking to inspect and repair the electrical problems.
The McGinnises point out that the evidence that was before the trial court indicated the following: That the McGinnises' experts inspected the McGinnis home and formulated the opinion that the fire was caused by improper installation of electrical wiring; that the McGinnises had experienced persistent electrical problems with their home; that the McGinnises had reported these persistent electrical problems to Jim Walter; and that on two occasions Jim Walter sent representatives (including the "head electrician for Jim Walter") to check out the electrical problems. The "[a]ction undertaken" (Cochran, supra) by Jim Walter was its act of sending out representatives to inspect the McGinnis home and to discover the reason for the persistent electrical problems. Viewing the evidence in a light most favorable to the McGinnises, we conclude that there exists a genuine issue of material fact as to whether Jim Walter's performance of the "[a]ction undertaken" was "uncompleted" (Cochran, supra) when it failed to discover a reason for the persistent electrical problems in the McGinnis home and to repair the defect, especially in light of the experts' opinion as to the state of the electrical system in the McGinnis home. The trier of fact could find that Jim Walter's failure to discover the reason for the persistent *Page 148 
electrical problems and its failure to repair the defect proximately caused the fire that resulted in Takresha's death, or it could find that Jim Walter's failure to discover the reason for the persistent electrical problems did not proximately cause the fire. This question should not be resolved on a motion for summary judgment. See Yarborough v.Springhill Mem'l Hosp., 545 So.2d 32, 34 (Ala. 1989). Therefore, the trial court improperly entered the summary judgment in favor of Jim Walter on the McGinnises' claim alleging a voluntary undertaking; as to that claim the summary judgment is reversed.
The McGinnises, relying on Hathcock v. Mitchell, 277 Ala. 586, 595,173 So.2d 576, 584 (1965), also contend that Jim Walter is directly liable to them because, they say, Jim Walter should hire competent and qualified contractors to complete construction of its homes. The McGinnises point out that the findings of their experts indicate that Holsombeck was clearly not competent to install the electrical system in the McGinnis home and that the state of the electrical system made the McGinnis home unsafe for habitation. However, no evidence presented to the trial court indicated that Holsombeck had a history of negligently installing electrical systems in homes or that Jim Walter either knew, or should have discovered in the exercise of due diligence, that Holsombeck was not competent to install electrical systems in homes. See Lane v.Central Bank of Alabama, N.A., 425 So.2d 1098, 1100 (Ala. 1983). Thus, the trial court properly entered the summary judgment for Jim Walter on this claim; as to this claim, the summary judgment is affirmed.
 III. The Claims Against Holsombeck
Holsombeck contends that there is no basis to find it liable for the fire that caused the death of Takresha McGinnis, especially in light of the State fire marshal's determination that the fire started in the front middle bedroom and that the probable cause of the fire was "children playing with matches." In its summary-judgment motion, Holsombeck contended that the court had before it no substantial evidence regarding causation. See Brushwitz, 757 So.2d at 432. Holsombeck contends that the basis of the McGinnises' theory (that the fire was caused by improper installation of the electrical wiring system) requires this Court to consider inference built upon inference — (1) because there were at least three alleged electrical defects in the house (none of which was noted on the building inspector's report and none of which caused or contributed to the fire), the entire electrical system must be defective; (2) there was no other heat source in the attic, so electrical wiring must have caused the fire; (3) because there were at least three staples driven too tightly into electrical wire located throughout the house (none of them was found in the attic, and no evidence indicated that any wire conductor within the insulation had been damaged by staple intrusion), there must have been a staple driven too tightly into an electrical wire located in the attic and that staple must have caused an arc that in turn caused the fire; and (4) the burn patterns in the front middle bedroom were exaggerated, so the mattress located in that bedroom must have been a foam-rubber mattress that was ignited when the fire fell from the attic above.
As previously noted, the McGinnises contend, based upon the findings of their experts, that the fire originated in the attic of the house, above the front middle bedroom, and that it was caused by a failure in the electrical wiring system in the attic. The McGinnises argue that it is undisputed that they had experienced persistent electrical problems after they moved into *Page 149 
their home and that their experts' findings demonstrate the following: that Holsombeck negligently installed the electrical system in the McGinnis house; that Holsombeck was clearly not competent to install the electrical system in the McGinnis home; and that the state of the electrical system in the McGinnis home rendered the home unsafe for habitation.
As previously noted, we review the evidence presented on a motion for summary judgment to determine whether it created a genuine issue of material fact and, if it did not, whether the movant was entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. Holsombeck, as the party moving for a summary judgment, had the burden of making a prima facie showing that no material fact was in dispute. Lott, 741 So.2d at 396. If it made that showing, then the burden shifted to the nonmovants, the McGinnises, to present substantial evidence creating a genuine issue of material fact. Lott, 741 So.2d at 396; Rule 56(c), Ala. R. Civ P. In conducting this review, we consider all of the relevant undisputed evidence and we view relevant disputed evidence in a light most favorable to the nonmovants, the McGinnises; and we resolve all reasonable doubts against the movant, Holsombeck. Wally's, Inc., 727 So.2d at 37. "[S]ummary judgment[s] [are] rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised." Yarborough v.Springhill Mem'l Hosp., 545 So.2d 32, 34 (Ala. 1989).
Viewing the relevant disputed evidence in a light most favorable to the McGinnises, we find a genuine issue of material fact as to the cause of the fire. The trier of fact could find that the fire started in the attic of the McGinnis home and that it was caused by defective installation of wiring; or, the trier of fact could find that it started in the middle bedroom and that it was caused by young children's playing with matches. This question should not be resolved on a summary-judgment motion.
Holsombeck, relying on Cincinnati Insurance Co. v. Synergy Gas, Inc.,585 So.2d 822 (Ala. 1991), also contends that the McGinnises should be prohibited from pursuing their action because, it argues, they failed to preserve all of the evidence relating to the fire. Holsombeck contends the McGinnises' failure to preserve all of the evidence has hampered its ability to defend this action. However, we do not see in the record before us indications of such spoliation of the evidence as would prevent Holsombeck from defending this action; but we do not intend to imply that Holsombeck may not raise the spoliation issue at the trial of this case.
The trial court improperly entered the summary judgment in favor of Holsombeck; that summary judgment is reversed.
 IV. Summary
The summary judgment for Alabama Power is affirmed. The summary judgment for Jim Walter is affirmed as to the claim alleging vicarious liability for the acts or omissions of Holsombeck and as to the claim alleging liability based on Holsombeck's alleged incompetence; it is reversed as to the claim alleging liability based on a voluntary undertaking to inspect and repair. The summary judgment for Holsombeck is reversed. The case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Lyons, Johnstone, and Woodall, JJ., concur.
[1] The McGinnises' original complaint contained eight other counts, which were dismissed pursuant to motions to dismiss and which are not argued in this appeal.
[2] Section A-108.1 of the Shelby County Electrical Code states:
 "It shall be unlawful for any person, firm or corporation to make or to allow connections from a source of electrical energy to any electrical wiring, devices or equipment for the installation of which a permit [is] required until approval has been given by the Director of Inspection Services authorizing such connection and the use of such wiring, devices or equipment."
This ordinance was in effect when the McGinnis house was built, and it applied to houses built in Shelby County. This ordinance did not apply to houses built in the Harpersville city limits.
[3] The Shelby County building inspectors did conduct a "final" electrical inspection of the McGinnises' house on January 28, 1991. The electrical system did not pass inspection because, the inspection report stated, "[a]ccording to the marking of the furnace heat, you need to pull two circuits to the unit." No other violations were noted, and no further inspection of the electrical system was conducted. However, there is no contention that the furnace was the cause of the fire that partially destroyed the McGinnis home.
[4] See note 3.
[5] The following items of evidence were before the trial court when it granted Jim Walter's motion for summary judgment: the affidavits of James E. Posey, Eleanor P. Posey, and John Thomas Thompson, with attached exhibits; the affidavit of Mike Roberts; the depositions of Cornelius McGinnis, Teresa McGinnis, and Neosha McGinnis; the building contract between Jim Walter and the McGinnises; the completion certificate signed by the McGinnises; the "Fire Fatality Report"; a certified copy of the fire investigation report; photographs from the fire scene; an autopsy report and the death certificate of Takresha McGinnis; an excerpt from plans and specifications of the McGinnis house; and Jim Walter's "Request for File Room."
[6] Even if we could consider that argument, it might not be well taken. See Baugher v. Beaver Constr. Co.,791 So.2d 932 (Ala. 2000). *Page 150